# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | | |
|---|---|---|
| SAN MIGUEL PRODUCE, INC., | § | |
| | § | |
| Plaintiff, | § | C.A. NO. 6:16-cv-00035-JRH-GRS |
| v. | § | |
| | § | |
| L.G. HERNDON JR. FARMS, INC., | § | |
| | § | |
| Defendant. | § | |

## AFFIDAVIT OF JASON HERNDON

STATE OF GEORGIA )
                       ) ss.
COUNTY OF TOOMBS )

Jason Herndon, after first being sworn states as follows:

My name is Jason Herndon. I am over 18 years of age and I have never been convicted of a crime. I am the Farm Manager of L. G. Herndon Jr. Farms, Inc. ("Farms") and the facts stated herein are within my personal knowledge.

On February 1, 2016, Farms filed an informal complaint against San Miguel Produce, Inc., a copy of which is attached hereto as Exhibit 1. On March 2, 2016, the USDA PACA Branch rejected the informal complaint by a letter, attached hereto as Exhibit 2.

As a result of the unsuccessful mediation held on March 21-22, 2016 between Farms and San Miguel Produce, Inc., Farms filed suit in the Superior Court of Toombs County, Georgia; a copy of which is attached hereto as Exhibit 3.

Further affiant sayeth not.

_____
Jason Herndon

Subscribed and sworn before me
this 13th day of April, 2016.
_____
Notary Public, State of Georgia
My Commission Expires: 4/15/18

# EXHIBIT 1

**INFORMAL COMPLAINT TO BE FILED UNDER
THE PERISHABLE AGRICULTURAL COMMODITIES ACT**

COPY

**Complaining Party:**

Company Name: L.G. Herndon Jr. Farms, Inc.

Address: 1188 Lawson Road

Lyons, GA 30436

PACA License No.: 19990056

Date: 02/01/2016

Contact Person: L.G. (Bo) Herndon, Jr.

Phone No: (912) 565-7640

Fax No: (912) 565-7158

Email: bo@vidaliasfinest.com

**Complaint To Be Filed Against:**

Company Name: San Miguel Produce, Inc.

Address: 4444 Navalair Road

Oxnard, CA 93033

PACA License No.: 19791126

Contact Person: Roy Nishimori

Phone No: (805) 488-0981

Fax No: (805) 488-2103

Email: sales@cutncclean.com

If there is a dispute, or the complaint does not involve unpaid invoices, please state your claim below.  You may also attach a separate letter describing the dispute.  Please be sure to include copies all relevant documents, such as invoices, passings, bills of ladings, and inspections.  If a broker was involved, please provide name and address of the broker, along with copies of the confirmations of sale, and/or any other documents issued by the broker.

**Please Provide Your Written Explanation Below:**

A Grower-Shipper Agreement was entered into between the parties September 12, 2014.  In addition, to the agreement, copies of the invoices and aging report are attached.

Please use the table below to list the unpaid invoices.  If you require more space you may use a separate sheet of paper to list the invoices and amounts due.

| Invoice No. | Date Shipped | Invoice Amount | Amount Paid | Balance Due |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  | Total Claim Amount: |  |  |

Documents and items required with this complaint:
- $100 Filing Fee.  Please make checks payable to "**USDA-AMS**"
- Include copies of supporting transaction documents such as:  Invoices, Revised Invoices, Passings, Account Statements, Credit Memorandums, Payment Term Agreements, Contracts, Bills of Lading, Confirmations of Sale, and Inspection Certificates
  **Please Note; Complaints received without the Filing Fee cannot be processed.**

EK479321416US

INFORMAL COMPLAINT TO BE FILED UNDER
THE PERISHABLE AGRICULTURAL COMMODITIES ACT

If you prefer, you may pay the filing fee with a credit card.  If so, please provide the following information:

Check Type of Credit Card:    X Visa         ___ MasterCard    ___ American Express     ___ Discover

Indicate Credit Card Charge Amount:    ✓ Informal, $100    ___ Formal, $500    ___ Other, $_____

Account No: 4246  3152  1228  1552          Expiration Date: 05/2016

Card Holder Name: J M Hall                          Card Holder Signature: J. Michael H
(Please Print as Shown on Card)

Daytime Phone No: 912-565-7640             Contact Name: L.G. (Bo) Herndon, Jr.

J. Michael Hall

## USDA PACA Field Offices:

### www.ams.usda.gov/paca

U.S. Department of Agriculture
AMS, F&V Programs, PACA Branch
Tucson Federal Building, Room 7 T
300 West Congress Street
Tucson, AZ 85701-1319
Telephone: 800-495-7222 (toll free) Ext. #5
Fax: 520-670-4798
**States Served:**  AZ, CA, CO, ID, IA, KS, MN, MO,
MT, ND, NM, NE, NV OR, SD, UT, WA, WY, AK, HI

U.S. Department of Agriculture
AMS, F&V Programs, PACA Branch
819 Taylor Street
Suite 8B02
Fort Worth, Texas 76102-9727
Telephone: 800-495-7222 (toll free) Ext. #4
Fax: 817- 978-0786
**States Served:**  AL, AR, FL, IL, IN, KY, LA,
MI, MS, OK, TN, TX, WI

U.S. Department of Agriculture
AMS, F&V Programs, PACA Branch
100 Riverside Parkway, Suite 101
Fredericksburg, VA 22406
Telephone: 800-495-7222 (toll free) Ext. #3
Fax: 540-373-2690
**States Served:**  CT, DC DE, GA, ME, MD, MA NC,
NH, NJ, NY, OH, PA, RI, PR, SC, VA, VI, VT, WV, Guam

## Sales Orders and Outstanding Invoices
L.G. Herndon Jr. Farms, Inc.

| Invoice | Invoice Date | PO Ref | Amount | Receipts | Balance | 0 - 30 | 31 - 60 | 61 - 90 | 91 - 120 | Later | Credits |
|---|---|---|---|---|---|---|---|---|---|---|---|
| San Miguel Produce | USD | | | Credit Limit: | .00 | | | | | | |
| 8289 | | | Order | | | | | | | | |
| 8296 | | | Order | | | | | | | | |
| 8312 | | | Order | | | | | | | | |
| 8314 | | | Order | | | | | | | | |
| 8326 | | | Order | | | | | | | | |
| 8334 | | | Order | | | | | | | | |
| 8354 | | | Order | | | | | | | | |
| 8355 | | | Order | | | | | | | | |
| 8363 | | | Order | | | | | | | | |
| 8371 | | | Order | | | | | | | | |
| 8283 | Jan 18, 2016 | | 5,193.60 | .00 | 5,193.60 | 5,193.60 | .00 | .00 | .00 | .00 | .00 |
| 8275 | Jan 16, 2016 | | 4,860.00 | .00 | 4,860.00 | 4,860.00 | .00 | .00 | .00 | .00 | .00 |
| 8269 | Jan 15, 2016 | | 7,424.00 | .00 | 7,424.00 | 7,424.00 | .00 | .00 | .00 | .00 | .00 |
| 8258 | Jan 14, 2016 | | 7,806.00 | .00 | 7,806.00 | 7,806.00 | .00 | .00 | .00 | .00 | .00 |
| 8260 | Jan 14, 2016 | | 4,704.00 | .00 | 4,704.00 | 4,704.00 | .00 | .00 | .00 | .00 | .00 |
| 8261 | Jan 14, 2016 | | 8,340.00 | .00 | 8,340.00 | 8,340.00 | .00 | .00 | .00 | .00 | .00 |
| 8235 | Jan 13, 2016 | 8071024 | 3,136.00 | .00 | 3,136.00 | 3,136.00 | .00 | .00 | .00 | .00 | .00 |
| 8246 | Jan 13, 2016 | | 5,944.00 | .00 | 5,944.00 | 5,944.00 | .00 | .00 | .00 | .00 | .00 |
| 8253 | Jan 13, 2016 | | 5,208.00 | .00 | 5,208.00 | 5,208.00 | .00 | .00 | .00 | .00 | .00 |
| 8243 | Jan 12, 2016 | | 8,178.40 | .00 | 8,178.40 | 8,178.40 | .00 | .00 | .00 | .00 | .00 |
| 8244 | Jan 12, 2016 | | 7,104.00 | .00 | 7,104.00 | 7,104.00 | .00 | .00 | .00 | .00 | .00 |
| 8245 | Jan 12, 2016 | | 2,128.00 | .00 | 2,128.00 | 2,128.00 | .00 | .00 | .00 | .00 | .00 |
| 8201 | Jan 11, 2016 | 8070695 | 1,176.00 | .00 | 1,176.00 | 1,176.00 | .00 | .00 | .00 | .00 | .00 |
| 8223 | Jan 11, 2016 | | 7,824.00 | .00 | 7,824.00 | 7,824.00 | .00 | .00 | .00 | .00 | .00 |
| 8224 | Jan 11, 2016 | | 9,048.00 | .00 | 9,048.00 | 9,048.00 | .00 | .00 | .00 | .00 | .00 |
| 8233 | Jan 11, 2016 | | 1,368.00 | .00 | 1,368.00 | 1,368.00 | .00 | .00 | .00 | .00 | .00 |
| 8200 | Jan 09, 2016 | 8070693 | 2,744.00 | .00 | 2,744.00 | 2,744.00 | .00 | .00 | .00 | .00 | .00 |
| 8212 | Jan 09, 2016 | | 5,928.00 | .00 | 5,928.00 | 5,928.00 | .00 | .00 | .00 | .00 | .00 |
| 8213 | Jan 09, 2016 | | 4,989.60 | .00 | 4,989.60 | 4,989.60 | .00 | .00 | .00 | .00 | .00 |
| 8214 | Jan 09, 2016 | | 7,056.00 | .00 | 7,056.00 | 7,056.00 | .00 | .00 | .00 | .00 | .00 |
| 8215 | Jan 09, 2016 | | 5,505.60 | .00 | 5,505.60 | 5,505.60 | .00 | .00 | .00 | .00 | .00 |
| 8207 | Jan 08, 2016 | | 9,054.00 | .00 | 9,054.00 | 9,054.00 | .00 | .00 | .00 | .00 | .00 |
| 8210 | Jan 08, 2016 | | 7,392.00 | .00 | 7,392.00 | 7,392.00 | .00 | .00 | .00 | .00 | .00 |
| 8211 | Jan 08, 2016 | | 10,624.00 | .00 | 10,624.00 | 10,624.00 | .00 | .00 | .00 | .00 | .00 |
| 8003 | Jan 07, 2016 | | 6,777.00 | .00 | 6,777.00 | 6,777.00 | .00 | .00 | .00 | .00 | .00 |
| 8007 | Jan 07, 2016 | 8068778 | 4,936.75 | .00 | 4,936.75 | 4,936.75 | .00 | .00 | .00 | .00 | .00 |
| 8020 | Jan 07, 2016 | | 5,301.00 | .00 | 5,301.00 | 5,301.00 | .00 | .00 | .00 | .00 | .00 |
| 8032 | Jan 07, 2016 | 8069031 | 4,557.00 | .00 | 4,557.00 | 4,557.00 | .00 | .00 | .00 | .00 | .00 |
| 8033 | Jan 07, 2016 | 8069032 | 1,519.00 | .00 | 1,519.00 | 1,519.00 | .00 | .00 | .00 | .00 | .00 |
| 8042 | Jan 07, 2016 | | 3,960.00 | .00 | 3,960.00 | 3,960.00 | .00 | .00 | .00 | .00 | .00 |
| 8054 | Jan 07, 2016 | | 5,953.00 | .00 | 5,953.00 | 5,953.00 | .00 | .00 | .00 | .00 | .00 |
| 8056 | Jan 07, 2016 | | 4,989.60 | .00 | 4,989.60 | 4,989.60 | .00 | .00 | .00 | .00 | .00 |
| 8057 | Jan 07, 2016 | | 1,152.00 | .00 | 1,152.00 | 1,152.00 | .00 | .00 | .00 | .00 | .00 |
| 8064 | Jan 07, 2016 | | 4,989.60 | .00 | 4,989.60 | 4,989.60 | .00 | .00 | .00 | .00 | .00 |
| 8071 | Jan 07, 2016 | | 7,230.70 | .00 | 7,230.70 | 7,230.70 | .00 | .00 | .00 | .00 | .00 |
| 8075 | Jan 07, 2016 | | 513.00 | .00 | 513.00 | 513.00 | .00 | .00 | .00 | .00 | .00 |
| 8087 | Jan 07, 2016 | 8069410 | 1,898.75 | .00 | 1,898.75 | 1,898.75 | .00 | .00 | .00 | .00 | .00 |
| 8089 | Jan 07, 2016 | | 4,170.00 | .00 | 4,170.00 | 4,170.00 | .00 | .00 | .00 | .00 | .00 |
| 8097 | Jan 07, 2016 | | 5,760.00 | .00 | 5,760.00 | 5,760.00 | .00 | .00 | .00 | .00 | .00 |
| 8101 | Jan 07, 2016 | | 1,026.00 | .00 | 1,026.00 | 1,026.00 | .00 | .00 | .00 | .00 | .00 |
| 8108 | Jan 07, 2016 | | 5,043.00 | .00 | 5,043.00 | 5,043.00 | .00 | .00 | .00 | .00 | .00 |
| 8198 | Jan 07, 2016 | | 11,222.40 | .00 | 11,222.40 | 11,222.40 | .00 | .00 | .00 | .00 | .00 |
| 8202 | Jan 07, 2016 | | 7,224.00 | .00 | 7,224.00 | 7,224.00 | .00 | .00 | .00 | .00 | .00 |
| 8203 | Jan 07, 2016 | | 7,324.80 | .00 | 7,324.80 | 7,324.80 | .00 | .00 | .00 | .00 | .00 |
| 8175 | Jan 06, 2016 | 8070446 | 3,136.00 | .00 | 3,136.00 | 3,136.00 | .00 | .00 | .00 | .00 | .00 |
| 8191 | Jan 06, 2016 | | 5,376.00 | .00 | 5,376.00 | 5,376.00 | .00 | .00 | .00 | .00 | .00 |
| 8193 | Jan 06, 2016 | | 3,939.25 | .00 | 3,939.25 | 3,939.25 | .00 | .00 | .00 | .00 | .00 |
| 8179 | Jan 05, 2016 | | 5,280.00 | .00 | 5,280.00 | 5,280.00 | .00 | .00 | .00 | .00 | .00 |
| 8180 | Jan 05, 2016 | | 3,750.00 | .00 | 3,750.00 | 3,750.00 | .00 | .00 | .00 | .00 | .00 |
| 8159 | Jan 04, 2016 | 8070225 | 2,352.00 | .00 | 2,352.00 | 2,352.00 | .00 | .00 | .00 | .00 | 00 |

## Sales Orders and Outstanding Invoices
L.G. Herndon Jr. Farms, Inc.

| Invoice | Invoice Date | PO Ref | Amount | Receipts | Balance | 0 - 30 | 31 - 60 | 61 - 90 | 91 - 120 | Later | Credits |
|---|---|---|---|---|---|---|---|---|---|---|---|
| San Miguel Produce | | USD | | Credit Limit: | .00 | | | | | | |
| 8161 | Jan 04, 2016 | | 7,056.00 | .00 | 7,056.00 | 7,056.00 | .00 | .00 | .00 | .00 | .00 |
| 8165 | Jan 04, 2016 | | 7,224.00 | .00 | 7,224.00 | 7,224.00 | .00 | .00 | .00 | .00 | .00 |
| 7856 | Jan 02, 2016 | | 4,536.00 | .00 | 4,536.00 | .00 | 4,536.00 | .00 | .00 | .00 | .00 |
| 7866 | Jan 02, 2016 | | 4,536.00 | .00 | 4,536.00 | .00 | 4,536.00 | .00 | .00 | .00 | .00 |
| 7867 | Jan 02, 2016 | | 5,815.50 | .00 | 5,815.50 | .00 | 5,815.50 | .00 | .00 | .00 | .00 |
| 7868 | Jan 02, 2016 | | 3,024.00 | .00 | 3,024.00 | .00 | 3,024.00 | .00 | .00 | .00 | .00 |
| 7889 | Jan 02, 2016 | 8068009 | 1,898.75 | .00 | 1,898.75 | .00 | 1,898.75 | .00 | .00 | .00 | .00 |
| 7898 | Jan 02, 2016 | | 6,489.00 | .00 | 6,489.00 | .00 | 6,489.00 | .00 | .00 | .00 | .00 |
| 7899 | Jan 02, 2016 | | 2,646.00 | .00 | 2,646.00 | .00 | 2,646.00 | .00 | .00 | .00 | .00 |
| 7900 | Jan 02, 2016 | | 4,800.00 | .00 | 4,800.00 | .00 | 4,800.00 | .00 | .00 | .00 | .00 |
| 8154 | Jan 02, 2016 | 8070209 | 784.00 | .00 | 784.00 | .00 | 784.00 | .00 | .00 | .00 | .00 |
| 8155 | Jan 02, 2016 | | 8,098.40 | .00 | 8,098.40 | .00 | 8,098.40 | .00 | .00 | .00 | .00 |
| 8156 | Jan 02, 2016 | | 2,784.00 | .00 | 2,784.00 | .00 | 2,784.00 | .00 | .00 | .00 | .00 |
| 8149 | Dec 31, 2015 | | 3,913.50 | .00 | 3,913.50 | .00 | 3,913.50 | .00 | .00 | .00 | .00 |
| 8135 | Dec 30, 2015 | 8069962 | 1,960.00 | .00 | 1,960.00 | .00 | 1,960.00 | .00 | .00 | .00 | .00 |
| 8141 | Dec 30, 2015 | | 2,852.10 | .00 | 2,852.10 | .00 | 2,852.10 | .00 | .00 | .00 | .00 |
| 8134 | Dec 29, 2015 | | 5,397.00 | .00 | 5,397.00 | .00 | 5,397.00 | .00 | .00 | .00 | .00 |
| 8136 | Dec 29, 2015 | | 3,726.00 | .00 | 3,726.00 | .00 | 3,726.00 | .00 | .00 | .00 | .00 |
| 8113 | Dec 28, 2015 | 8069761 | 1,898.75 | .00 | 1,898.75 | .00 | 1,898.75 | .00 | .00 | .00 | .00 |
| 8125 | Dec 28, 2015 | | 4,914.00 | .00 | 4,914.00 | .00 | 4,914.00 | .00 | .00 | .00 | .00 |
| 8126 | Dec 28, 2015 | | 3,474.00 | .00 | 3,474.00 | .00 | 3,474.00 | .00 | .00 | .00 | .00 |
| 8105 | Dec 26, 2015 | | 3,797.50 | .00 | 3,797.50 | .00 | 3,797.50 | .00 | .00 | .00 | .00 |
| 8109 | Dec 26, 2015 | | 2,694.00 | .00 | 2,694.00 | .00 | 2,694.00 | .00 | .00 | .00 | .00 |
| 7966 | Dec 24, 2015 | 8068565 | 1,898.75 | .00 | 1,898.75 | .00 | 1,898.75 | .00 | .00 | .00 | .00 |
| 7967 | Dec 24, 2015 | 8058567 | 3,038.00 | .00 | 3,038.00 | .00 | 3,038.00 | .00 | .00 | .00 | .00 |
| 7972 | Dec 24, 2015 | | 7,321.50 | .00 | 7,321.50 | .00 | 7,321.50 | .00 | .00 | .00 | .00 |
| 7978 | Dec 24, 2015 | | 5,241.00 | .00 | 5,241.00 | .00 | 5,241.00 | .00 | .00 | .00 | .00 |
| 7979 | Dec 24, 2015 | | 1,881.00 | .00 | 1,881.00 | .00 | 1,881.00 | .00 | .00 | .00 | .00 |
| 7983 | Dec 24, 2015 | | 4,104.00 | .00 | 4,104.00 | .00 | 4,104.00 | .00 | .00 | .00 | .00 |
| 7984 | Dec 24, 2015 | | 1,670.10 | .00 | 1,670.10 | .00 | 1,670.10 | .00 | .00 | .00 | .00 |
| 7985 | Dec 24, 2015 | | 4,788.00 | .00 | 4,788.00 | .00 | 4,788.00 | .00 | .00 | .00 | .00 |
| 7986 | Dec 24, 2015 | | 6,228.00 | .00 | 6,228.00 | .00 | 6,228.00 | .00 | .00 | .00 | .00 |
| 7993 | Dec 24, 2015 | | 5,710.00 | .00 | 5,710.00 | .00 | 5,710.00 | .00 | .00 | .00 | .00 |
| 7932 | Dec 21, 2015 | 8068256 | 3,038.00 | .00 | 3,038.00 | .00 | 3,038.00 | .00 | .00 | .00 | .00 |
| 7951 | Dec 21, 2015 | | 5,544.30 | .00 | 5,544.30 | .00 | 5,544.30 | .00 | .00 | .00 | .00 |
| 7952 | Dec 21, 2015 | | 4,732.00 | .00 | 4,732.00 | .00 | 4,732.00 | .00 | .00 | .00 | .00 |
| 7953 | Dec 21, 2015 | | 2,898.00 | .00 | 2,898.00 | .00 | 2,898.00 | .00 | .00 | .00 | .00 |
| 7961 | Dec 21, 2015 | | 6,369.00 | .00 | 6,369.00 | .00 | 6,369.00 | .00 | .00 | .00 | .00 |
| 7756 | Dec 18, 2015 | | 5,503.50 | .00 | 5,503.50 | .00 | 5,503.50 | .00 | .00 | .00 | .00 |
| 7857 | Dec 18, 2015 | | 2,493.00 | .00 | 2,493.00 | .00 | 2,493.00 | .00 | .00 | .00 | .00 |
| 7861 | Dec 18, 2015 | | 3,038.00 | .00 | 3,038.00 | .00 | 3,038.00 | .00 | .00 | .00 | .00 |
| 7890 | Dec 18, 2015 | 8068011 | 1,494.50 | .00 | 1,494.50 | .00 | 1,494.50 | .00 | .00 | .00 | .00 |
| 7901 | Dec 18, 2015 | | 4,194.00 | .00 | 4,194.00 | .00 | 4,194.00 | .00 | .00 | .00 | .00 |
| 7912 | Dec 18, 2015 | | 6,736.08 | .00 | 6,736.08 | .00 | 6,736.08 | .00 | .00 | .00 | .00 |
| 7915 | Dec 18, 2015 | | 5,292.00 | .00 | 5,292.00 | .00 | 5,292.00 | .00 | .00 | .00 | .00 |
| 7926 | Dec 18, 2015 | | 3,519.00 | .00 | 3,519.00 | .00 | 3,519.00 | .00 | .00 | .00 | .00 |
| 7829 | Dec 17, 2015 | | 4,026.00 | .00 | 4,026.00 | .00 | 4,026.00 | .00 | .00 | .00 | .00 |
| 8010 | Dec 15, 2015 | | 4,965.50 | .00 | 4,965.50 | .00 | 4,965.50 | .00 | .00 | .00 | .00 |
| 8018 | Dec 15, 2015 | | 3,078.00 | .00 | 3,078.00 | .00 | 3,078.00 | .00 | .00 | .00 | .00 |
| 7703 | Dec 08, 2015 | | 4,663.50 | .00 | 4,663.50 | .00 | 4,663.50 | .00 | .00 | .00 | .00 |
| 7713 | Dec 08, 2015 | | 4,428.00 | .00 | 4,428.00 | .00 | 4,428.00 | .00 | .00 | .00 | .00 |
| 7720 | Dec 08, 2015 | | 4,140.00 | .00 | 4,140.00 | .00 | 4,140.00 | .00 | .00 | .00 | .00 |
| 7730 | Dec 08, 2015 | | 5,535.00 | .00 | 5,535.00 | .00 | 5,535.00 | .00 | .00 | .00 | .00 |
| 7731 | Dec 08, 2015 | | 4,831.20 | .00 | 4,831.20 | .00 | 4,831.20 | .00 | .00 | .00 | .00 |
| 7735 | Dec 08, 2015 | | 5,643.00 | .00 | 5,643.00 | .00 | 5,643.00 | .00 | .00 | .00 | .00 |
| 7740 | Dec 08, 2015 | | 4,271.40 | .00 | 4,271.40 | .00 | 4,271.40 | .00 | .00 | .00 | .00 |
| 7745 | Dec 08, 2015 | | 5,526.00 | .00 | 5,526.00 | .00 | 5,526.00 | .00 | .00 | .00 | .00 |
| 7746 | Dec 08, 2015 | | 4,730.40 | .00 | 4,730.40 | .00 | 4,730.40 | .00 | .00 | .00 | .00 |
| 7757 | Dec 08, 2015 | | 6,048.00 | .00 | 6,048.00 | .00 | 6,048.00 | .00 | .00 | .00 | .00 |
| 7758 | Dec 08, 2015 | | 2,520.00 | .00 | 2,520.00 | .00 | 2,520.00 | .00 | .00 | .00 | .00 |

Feb 02, 2016 11:07:09

## Sales Orders and Outstanding Invoices
L.G. Herndon Jr. Farms, Inc.

| Invoice | Invoice Date | PO Ref | Amount | Receipts | Balance | 0 - 30 | 31 - 60 | 61 - 90 | 91 - 120 | Later | Credits |
|---|---|---|---|---|---|---|---|---|---|---|---|
| San Miguel Produce   USD | | | | Credit Limit: | .00 | | | | | | |
| 7765 | Dec 08, 2015 | | 6,048.00 | .00 | 6,048.00 | .00 | 6,048.00 | .00 | .00 | .00 | .00 |
| 7772 | Dec 08, 2015 | 8067038 | 3,797.50 | .00 | 3,797.50 | .00 | 3,797.50 | .00 | .00 | .00 | .00 |
| 7779 | Dec 08, 2015 | | 4,455.90 | .00 | 4,455.90 | .00 | 4,455.90 | .00 | .00 | .00 | .00 |
| 7780 | Dec 08, 2015 | | 4,067.40 | .00 | 4,067.40 | .00 | 4,067.40 | .00 | .00 | .00 | .00 |
| 7784 | Dec 08, 2015 | | 2,430.00 | .00 | 2,430.00 | .00 | 2,430.00 | .00 | .00 | .00 | .00 |
| 7797 | Dec 08, 2015 | | 5,337.00 | .00 | 5,337.00 | .00 | 5,337.00 | .00 | .00 | .00 | .00 |
| 7800 | Dec 08, 2015 | | 5,047.00 | .00 | 5,047.00 | .00 | 5,047.00 | .00 | .00 | .00 | .00 |
| 7817 | Dec 08, 2015 | | 5,616.00 | .00 | 5,616.00 | .00 | 5,616.00 | .00 | .00 | .00 | .00 |
| 7821 | Dec 08, 2015 | | 5,037.00 | .00 | 5,037.00 | .00 | 5,037.00 | .00 | .00 | .00 | .00 |
| 7824 | Dec 08, 2015 | 8066256 | 759.50 | .00 | 759.50 | .00 | 759.50 | .00 | .00 | .00 | .00 |
| 7825 | Dec 08, 2015 | 8067523 | 1,898.75 | .00 | 1,898.75 | .00 | 1,898.75 | .00 | .00 | .00 | .00 |
| 7830 | Dec 08, 2015 | | 4,512.60 | .00 | 4,512.60 | .00 | 4,512.60 | .00 | .00 | .00 | .00 |
| 7844 | Dec 08, 2015 | | 4,602.60 | .00 | 4,602.60 | .00 | 4,602.60 | .00 | .00 | .00 | .00 |
| 7851 | Dec 08, 2015 | | 2,790.00 | .00 | 2,790.00 | .00 | 2,790.00 | .00 | .00 | .00 | .00 |
| 5679 | Feb 19, 2015 | | 20,727.00 | .00 | 20,727.00 | .00 | .00 | .00 | .00 | 20,727.00 | .00 |
| Total: | | | 594,698.53 | .00 | 594,698.53 | 276,396.05 | 297,575.48 | .00 | .00 | 20,727.00 | .00 |
| Grand Total: | | | 594,698.53 | .00 | 594,698.53 | 276,396.05 | 297,575.48 | .00 | .00 | 20,727.00 | .00 |

## GROWER - SHIPPER AGREEMENT

This GROWER - SHIPPER AGREEMENT ("Agreement") is made and entered on this 12th day of September, 2014 by and between San Miguel Produce, Inc., a California corporation ("Shipper"), and L. G. Herndon, Jr. Farms, Inc. (Grower).

### RECITALS

A.      Shipper is an established grower, processor, and distributor of fresh cut greens in California and is the owner of the national trademark names "Cut 'N Clean Greens", "Jade", "Cut 'N Clean Greens Organic", "San Miguel Produce", and "San Miguel Produce Organic".

B.      Shipper has a strong marketing position in the United States with its "Cut 'N Clean" and related brands and is entering into a Co-Packing Agreement concurrently herewith with ROBO PRODUCE LLC to provide quality raw products from local regions, to process fresh cut products, and to ship its branded products to customers.

C.      Grower is a grower and shipper of fresh vegetables in Georgia.

D.      Grower and Shipper enter into this Agreement to create a mutually beneficial business relationship with respect to the production and distribution of Shipper's "Cut 'N Clean Greens" brand.  The parties by this Agreement are entering into a contractual growing arrangement.  This is not a joint venture or a partnership.

### AGREEMENT

1.      Term

The initial term of this Agreement shall be for five (5) years commencing on the 1st day of November, 2014.

2.      Grower's Responsibilities

Grower shall have the following responsibilities:

a.      Growing, harvesting and delivering to ROBO PRODUCE LLC's production facility in Toombs County, Georgia fresh produce, crops and varieties of raw vegetables, hereinafter referred to as "Crops," in such quantities and prices as described in Addendum A, attached, and as may be modified in writing by the Parties from time to time during the term of this Agreement.



Initial by Grower

1

Initialed by Shipper

b.      Grower shall plant and grow the Crops in a farmer like manner, in accordance with the best farming standards and practices prevailing in the area in which they are to be grown and according to the specifications provided by Shipper.

c.      Grower shall harvest, grade and deliver the Crops in accordance with best industry standards and practices and as specified from time to time by Shipper, and in accordance with all federal, state and local laws, rules and regulations.

d.      Grower shall provide all labor and equipment necessary to grow, harvest, grade and transport the Crops to the ROBO PRODUCE LLC processing facility in Toombs County, Georgia at Grower' sole cost and expense.

e.      The Crops must meet Shipper's quality and product standards as set forth in Addendum B, attached, and as may be modified in writing by the Parties from time to time during the term of this Agreement.

f.      Grower shall make a good faith effort to grow Crops in sufficient quantity to meet the anticipated volume of orders set forth in Addendum A, attached. Grower agrees that in the event that weather or other circumstances prohibit production sufficient to cover Shipper's orders, Grower will take steps to cover the orders from production of other growers at the same contract price. In the event that Grower is unable to obtain product at the same contract price, Grower and Shipper will negotiate a "seasonal price" to cover the cost of product to meet Shipper's orders. All Crops from whatever source shall be invoiced to Shipper by Grower.

g.      Implement and farm GAP's following the California Leafy Greens Marketing Agreement (LGMA) metrics and protocols.

h.      Hydro cool the Crops prior to delivery to ROBO PRODUCE LLC's processing facility located in Toombs County, Georgia.

i.      Invoice Shipper on a weekly basis for all amounts and sums due under the terms of this Agreement.

3.      <u>Shipper's Responsibilities</u>

a.      Purchase from Grower the Crops set forth in Addendum A, attached, as the same are harvested during the calendar year, including such Crops as may be provided pursuant to Section 2. f, above.

 Initial by Grower

2

 Initialed by Shipper

b.     Manage all sales and marketing of packaged fresh-cut products. Shipper will sell and market all products to regional and national accounts.

c.     Provide sales and marketing opportunities for Grower's bunch/bulk product sales.

d.     Pay Grower within thirty (30) days of date of invoice for Crops delivered to the ROBO PRODUCE LLC processing facility in Toombs County, Georgia in accordance with the SCHEDULE set forth in Addendum B, attached.

4.     Division of Profits

a.     In addition to the payment for the Crops, which Grower shall sell to Shipper at cost, provided for above, Shipper and Grower agree to divide equally the profits from the sale of all products processed, packed and shipped through the ROBO PRODUCE LLC facility in Toombs County, Georgia. However, Grower shall only be entitled to a division of profits, if any, with respect to those Crops not grown by Grower, but obtained from third parties to cover orders as set forth in Section 2.f above, if Grower has actively participated in securing and delivering the cover Crops to the ROBO PRODUCE LLC facility.

b.     Shipper shall keep sufficient records to identify the nature and amount of all costs incurred in the production of a final product marketed for sale by Shipper and all income received from the sale of all products processed, packed and shipped through the ROBO PRODUCE LLC facility in Toombs County, Georgia and shall provide Grower with not less than monthly reports of sales income and expenses. The costs shall include, but are not limited to, production, labor, materials, food safety, warehousing, facilities, equipment, shipping costs, and administrative costs. Grower shall be entitled to inspect and copy all original documents necessary to or utilized in the calculation of profit and loss; provided, however, Grower shall not be entitled to sales data pertaining to Shipper's particular customers. Grower shall be provided with copies of all such documents within fifteen (15) days of receipt of a written request therefore. The copies provided to Grower shall be delivered to Grower at the address provided hereinafter with regard to notices.

c.     Shipper shall be entitled to receive an administrative fee on the sale of the packaged product to Shipper's customers as set forth on Addendum A, attached. The

 Initial by Grower

3

 Initialed by Shipper

administrative fee shall be adjusted annually. This fee is one of the costs included in Section 4.b, above.

       d.    Profits shall be calculated and reported to Shipper and Grower on a monthly basis and distributed equally between Shipper and Grower at such times as agreed to by Shipper and Grower.

5.    <u>Termination for Cause</u>

       It is the intention of the parties that neither Party shall be entitled to terminate this Agreement during the term set forth above, except for cause, and in accord with the provisions set forth herein. "Cause" shall be defined as a material breach of this Agreement, which breach is not cured within thirty (30) days of receipt of written notice from the non-breaching Party specifying and describing the nature of the material breach. If the material breach is not cured within thirty (30) days of receipt of the written notice, the Parties agree to submit all issues of breach and termination to mediation within sixty (60) days of receipt of written notice of a breach. If mediation does not result in a resolution of the breach, the Party asserting a material breach of this Agreement may terminate it for cause upon thirty (30) days written notice of the date upon which termination shall be effective. To the extent possible, the Parties shall continue to perform in accord with this Agreement after receipt of notice of a material breach until such time as this contract is terminated as set forth herein.

6.    <u>Termination for Bankruptcy/Insolvency</u>.

       Upon the occurrence of any of the following circumstances, a Party may terminate this Agreement effective immediately, upon written notice if:

       a.    the other Party becomes the subject of a voluntary petition in bankruptcy or any voluntary proceedings relating to insolvency, receivership, liquidation or composition for the benefit of creditors;

       b.    the other Party becomes the subject of an involuntary petition in bankruptcy or any involuntary proceeding relating to insolvency, receivership, liquidation, assignment or composition for the benefit of creditors, if such petition is not dismissed within sixty (60) days;

       c.    the other Party effectively goes out of business or ceases substantially all of its business operations within the regions described in Addendum A, attached; or

 Initial by Grower

4

 Initialed by Shipper

     d.     the termination of any of the following Agreements related to the goals of the Parties as set forth herein, to wit:  (1) an Equipment Lease entered into between the Parties regarding the processing equipment to be used by the Co-Packer, and (2) Co-Packing Agreement between Shipper herein and ROBO PRODUCE LLC relating to the supply of Produce to be processed and packed by Co-Packer.

7.    <u>Mediation</u>

     The parties agree to mediate any dispute or claim arising out of this Agreement before resorting to any legal action.  Mediation fees, if any, shall be apportioned equally among the parties involved.   If any party commences legal action without first attempting to resolve the matter through mediation, or refuses to mediate after a request is made, then that party shall not be entitled to recover attorney's fees, even if attorney's fees would otherwise be available to that party in any such other proceeding.

8.    <u>Non-Compete and Non-Disclosure Agreements</u>

     a.     Grower will not compete with Shipper by providing and selling products and/or services to other processors and competitors as set forth herein.

     b.     This non-competition provision shall apply only to the territories in which Shipper conducts its business operations, including but not limited to, the regions described in Addendum D attached hereto..    This non-competition agreement shall continue during the term of this Agreement, or any subsequent commercial relationship between Grower and Shipper

     c.     Non-compete

     Grower agrees not to compete in the sale, marketing, or distribution of like or substantially like products or services as those involved in Shipper's business to, either other processor or competitors of Shipper, or to any business, individual, or company whose identity was gathered through the commercial relationship that is being contracted for, without written consent of Shipper.

     d.     Non- Disclosure

     Grower also agrees not to disclose any proprietary information about Shipper's products, customers, brands, processes or program as set forth in the nondisclosure attached hereto as Addendum C.



_____ Initial by Grower

5

_____ Initialed by Shipper

9.    Insurance

Grower shall carry the appropriate insurance, naming Shipper as an additional insured, approved by Shipper. Grower shall provide Shipper with a copy of the insurance policy and a certificate of insurance evidencing such coverage and Grower shall notify Shipper in the event of any cancellation or change in the policy.

10.   Pesticides, Herbicides and Other Chemical Usage

Grower represents and warrants that all Crops grown pursuant to this Agreement will be grown using only herbicides, pesticides and other chemicals which are registered under the Federal Insecticide, Fungicide and Rodenticide Act, as amended (7 U.S.C. Section 136, et seq.),and all other applicable federal, state and local regulations and laws concerning herbicides, pesticides and other chemicals.  Grower will immediately notify Shipper of any known or suspected violations of chemical usage on the Crops or on any surrounding crops.  Further, upon request, Grower will provide Shipper with reports of current pesticide use for the real property on which the Crops are to be grown.

11.   Marketing

a.   Shipper shall have the exclusive right to receive, take possession of, market, and sell the Crops under its own labels, or under such other labels as it may choose. Shipper shall contract with ROBO PRODUCE LLC to receive, cool, store, load, and distribute the Crops in accordance with the local industry standards and practices and Shipper's direction.

b.   In no event is this Agreement to be deemed or construed as a guarantee or warranty of any specific price, marketing, or distribution of either the Crops or a guarantee or warranty that Shipper will be able to obtain for the Crops the average price obtainable for similar commodities on the sale date. 

c.   Shipper may reject any of the Crops delivered pursuant to this Agreement that do not comply with the conditions, specifications and requirements set forth in this Agreement. Shipper may charge all costs, freight, and expenses paid or incurred by Shipper in connection with the receipt and return of any such rejected crop to the Grower. Shipper may reject in full or in part any delivery of the Crops made or tendered if a substantial portion of the Crops, as determined by Shipper, does not conform to the

_____ Initial by Grower                    6                    _____ Initialed by Shipper

specifications set forth in this Agreement.   In the event that Shipper makes any determination that it intends to reject any delivery or partial delivery of the Crops, Shipper must first confer with Grower regarding Shipper's determination and present Grower with evidence which justifies Shipper's conclusion that the Crops do not conform to the specifications set forth in this Agreement. In the event that Grower disagrees with Shipper's determination, then the parties shall arrange for a U.S.D.A. inspection of the Crops which are subject of the dispute. The costs of the U.S.D.A. inspection shall be paid by the party losing the dispute.

12.     Label Protection

Shipper has the exclusive rights to use all trademarks and trade names used on the cartons and packing materials used to pack the Crops. Grower agrees that packing materials which contain Shipper's trademarks and trade names are to be used by Grower exclusively for packing the Crops. Without exception, all unused packing materials shall be returned to Shipper for credit. The provisions of this Section 12 shall survive and continue despite any termination of the Agreement.

13.     Grower Employees, Contractors and Agents

a.     All persons performing work in connection with the operations or services performed by Grower shall be employees, contractors, or agents of Grower. Grower shall determine the method, means, and manner of performance of work of Grower's employees, agents or contractors. Grower agrees to indemnify and hold Shipper harmless from and against any and all claims arising from injury or damage to persons or property caused by Grower or its employees, contractors or agents.

b.     Grower and Shipper operate independent businesses, and each party is an independent contractor to the other party and neither is an employee or agent to the other.   Grower shall be solely responsible for the selection, hiring, firing, supervision, assignment, direction, setting of wages, hours, and working conditions, and adjustment of grievances of Grower's employees, contractors and agents. Grower shall determine the method, means, and manner of the performance of the work of Grower's employees, contractors, and agents, if any, and of their performance of this Agreement. Neither Shipper nor any of Shipper's quality control personnel or other employees shall have any right or authority to direct or control those persons in any respect whatsoever,

_____Initial by Grower

7

_____Initialed by Shipper

including, but not limited to, hiring, firing, disciplining, directing, supervising and setting wages and working conditions and adjusting grievances.

14.   Force Majeure

Neither party to this Agreement shall be required to perform, its obligations under this Agreement during any period in which nonperformance is caused by (a) strikes, or work stoppages; (b) war, hostilities, or national emergencies; (c) acts of God, the elements, mechanical breakdowns, or power failure; (d) orders issued by any local, state or federal agency of government as to any part of the growing, harvesting, packing and selling of the Crops; or (e) causes beyond the control of the party unable to perform, including eminent domain actions. In the event that a Force Majeure Event persists for more than ninety (90) consecutive days, the unaffected Party may thereafter terminate this Agreement for convenience upon written notice to the affected Party.

15.   Warranty

The respective Parties hereby warrant, one to the other, that this Agreement has been approved by resolution of the appropriate board or other corporate authority in accordance with the by-laws and/or operating agreements of the Party and that the undersigned representatives executing this Agreement on behalf of the Party are properly authorized and empowered to do so.

16.   Notices

All notices to be given under this Agreement shall be in writing and considered delivered when mailed to the parties by certified mail, postage prepaid, on the third day after mailing, or when hand delivered, on the date of service, to the respective addresses as follows:

Shipper:   San Miguel Produce, Inc.,
A California Corporation
Attention: Roy Nishimori
4444 Navalair Road
Oxnard, CA 93033

Grower:   L. G. Herndon, Jr. Farms, Inc.
A Georgia Corporation
Attention: L. G. (Bo) Herndon, Jr., President
1188 Lawson Road
Lyons, Georgia 30436

_____ Initial by Grower                                          8                               _____ Initialed by Shipper

17.   Binding Agreement

This Agreement shall be binding upon and inure to the benefit of the heirs, executors, administrators, successors and assigns of the parties hereto. Notwithstanding the foregoing, neither party may assign this Agreement without the prior written approval of the other party.

18.   Modifications

No change or modifications of this Agreement shall be valid unless the same shall be in writing and signed by both parties hereto.

19.   Waiver of Breach

Waiver of a breach by a party to this Agreement shall not operate as a waiver of any continuing or further breach by any party. Either Party's delay or omission in exercising any right, power, or remedy pursuant to a breach or default by the other Party shall not impair any right, power, or remedy which that Party may have.

20.   Remedies

The rights and remedies of both Parties as set forth in this Agreement are not exclusive and are in addition to any other rights and remedies available to it in law or equity.

21.   Relationship of Parties

The Parties agree that both Parties are independent contractors.  Neither Party shall have the right to bind, represent or act for the other Party.  The Parties shall have no agency, partnership, joint venture or fiduciary duties to each other. Each Party's employees shall in no sense be considered employees of the other Party.

22.   Assignment

Neither Party shall assign any right or interest herein nor delegate any duty or obligation without the prior written consent of the other Party; any such attempted assignment shall be void.

23.   Indemnification

Each party shall indemnify, defend and hold harmless the other party from any and all liability, loss, claim, lawsuit, injury, cost, damage or expense whatsoever (including reasonable attorneys' fees and costs) arising out of, incident to, or in any

_Initial by Grower

9

_Initialed by Shipper

manner occasioned by the performance or nonperformance of any duty or responsibility under this Agreement or the applicable law by such indemnifying party.

24.    Governing Law and Jurisdiction.

This Agreement, and any dispute arising from the relationship between the parties to this Agreement, shall be governed by, construed and determined  in accordance with the Laws of the State of Georgia, without regard to its conflict of laws rules. Any dispute that arises under or relates to this Agreement (whether contract, tort, or both) shall be resolved in the Superior Court of Toombs County, Georgia, and the parties expressly waive any right they may otherwise have to cause any such action or proceeding to be brought or tried elsewhere, waive all defenses of lack of personal jurisdiction and forum non conveniens.

25.    Drafting

The Parties have jointly participated in the negotiation and drafting of this Agreement. Each has been represented by counsel of its choosing. If an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof will arise for or against any Party because of the authorship of any provision of this Agreement.

26.    Survival

Any obligations and duties, which by their nature extend beyond the expiration or termination of this Agreement shall survive any such expiration or termination and remain in full force and effect until fulfilled.

27.    Prior Agreements

This Agreement supersedes any and all other agreements either oral or in writing between the parties with respect to the subject of this Agreement.  This Agreement contains all of the covenants and agreements between the parties and each party to this agreement acknowledges that no representations, inducements, promises, or agreements have been made by or on behalf of any party except those covenants and agreements embodied in this Agreement.  No agreement, statement, or promise not contained in this Agreement shall be valid or binding.

10


Initial by Grower


Initialed by Shipper

8.    Enforceability

a.    If any term of this Agreement is held by a court of competent jurisdiction to be void or unenforceable, the remainder of the contract terms shall remain in full force and effect and shall not be affected.

b.    The validity of this Agreement and any of its terms or provisions, as well as the rights and duties of the parties under this Agreement, shall be construed pursuant to and in accordance with the laws of the State of Georgia.

9.    Attorney's Fees

If any party shall bring any action against the other party under this Agreement, the prevailing party in such action shall be entitled to judgment for reasonable attorneys' fees and costs to be fixed by the court, including without limitation, the cost of collection of any judgment awarded by the court.

**IN WITNESS WHEREOF** the parties have executed this Agreement by their duly authorized representatives the day and year first set out above.

Dated: September 17, 2014

**SHIPPER:**

SAN MIGUEL PRODUCE, INC.,

A California Corporation

By: Roy Nishimori, President

Attest:

> SUSAN E. MONTORIO
> Commission # 1955619
> Notary Public - California
> Ventura County
> My Comm. Expires Oct 8, 2015

**GROWER:**

Dated: September 12, 2014

L. G. HERNDON FARMS, INC.

A Georgia Corporation

By: L. G. (Bo) Herndon, Jr., President

Attest:

____ Initial by Grower

11

____ Initialed by Shipper

# ADDENDUM A

## PRODUCTION REQUIREMENTS BY CROP, QUANTITY, AND PRICE

## CROP YEAR 2014 - 2015

| CROP: | QUANTITY: | PRICE: |
|---|---|---|
| Fresh Cut Greens – Conventional | Schedule Attached | $ .30 per Field Lb. |
| Fresh Cut Greens – Organic | Schedule Attached | $.40 per Field Lb. |
| Fresh Cut - Jade Asian – Conventional | Schedule Attached | TBD |
| Outside Contract Seasonal Growing: | Schedule Attached | TBD |

- o  Contract "seasonal" growing to be planned for in advance and negotiated by Herndon.
- o  Contract price to be submitted to San Miguel for approval.


ADMINISTRATIVE FEE:

- •  San Miguel Produce, Inc. shall retain an Administrative Fee for each case of product packaged and sold from the Georgia facility.

- •  Administrative Fee:      $ 1.25 per case sold



_____ Initialed by Grower                                    Initialed by Shipper

# ADDENDUM B

## PRODUCT SPECIFICATIONS

A complete and comprehensive Product Spec binder will be provided by San Miguel to Herndon Farms to assist with guidelines for growing and harvesting quality of all product varieties.

_____ Initialed by Grower          13          _____ Initialed by Shipper

# ADDENDUM C

# NON-DISCLOSURE AGREEMENT

_____Initial by Grower     _____Initialed by Shipper

# NON-DISCLOSURE AGREEMENT

THIS NON-DISCLOSURE AGREEMENT ("Agreement@) is entered into on this 12th day of September, 2014, by and between San Miguel Produce, Inc.. a California corporation ("Shipper"), and L. G. Herndon, Jr. Farms, Inc. ("Grower").

This Agreement is entered into between Shipper and Grower in connection with that Grower Shipper Agreement executed on September 12, 2014.

1. <u>Definitions</u>. As used in this Agreement the following terms have the following definitions:

"Confidential Information" includes for the purpose of this Agreement all matters disclosed by Shipper with respect to its proprietary information about Shipper's products, customers, plans, processes, or programs in connection with its fresh cut greens business under, "Cut 'N Clean Greens", "Jade", "Cut 'N Clean Greens Organic", "San Miguel Produce", San Miguel Produce Organic" and customer Private Label packs. Confidential Information is to be broadly defined and includes: (i) all information that has or could have commercial value or other utility in the business in which Shipper is engaged or in which it contemplates engaging and; (ii) all information that, if disclosed without authorization, could be detrimental to the interest of Shipper, whether or not such information is identified as Confidential Information by Shipper. By example and without limitation, Confidential Information includes all information or teaching techniques, processes, formulas, trade secrets, inventions, discoveries, improvements, research or development test results, specifications, data, know-how, formats, marketing plans, business plans, strategies, forecasts, unpublished financial information, budgets, projections, and customer and supplier identities, characteristics, and agreements.

2. <u>Effective Date</u>. This agreement is entered into effective September 12, 2014.

3. <u>Protection of Shipper's Confidential Information</u>.

a. At all times, Grower will hold in trust, keep confidential, not make use of and not disclose or reveal to any third party any Confidential Information. Grower will not cause the transmission, removal, or transport of Confidential Information from the production facility located in Toombs County, Georgia or such other place of business specified by Shipper, without prior written approval of Shipper.

b. Grower acknowledges that the unauthorized use or disclosure of Confidential Information may be highly prejudicial to the interests of Shipper, an invasion of privacy, or an improper disclosure of trade secrets.

4. <u>Specific Performance</u>.

a. Because Grower's breach of this Agreement may cause Shipper irreparable harm for which money is inadequate compensation, Shipper will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies.

      b.      Grower acknowledges and agrees that the protections set forth in this Agreement are a material condition to consideration of any proposals by Shipper.

      5.    <u>Notices</u>.   Any notice, report, or statement required or permitted under this Agreement will be considered to be given or transmitted when sent by certified mail, postage prepaid, addressed to the party for whom it is intended at its address of record: by facsimile, which notice will be effective on computer confirmation of receipt; or by courier or messenger service, which notice will be effective on receipt by recipient as indicated on the carrier's receipt. The record addresses of the parties are as follows:

      Shipper:    Roy Nishimori, President
                 San Miguel Produce, Inc.
                 4444 Navalair Road
                 Oxnard, California 93033

      Grower:     L. G. (Bo) Herndon, Jr., President
                 L. G. Herndon, Jr. Farms, Inc.
                 1188 Lawson Road
                 Lyons, Georgia 30436

      6.    <u>Amendment</u>. This Agreement may be supplemented, amended, or modified only by the mutual agreement of the parties. No supplement, amendment, or modification of this Agreement will be binding unless it is in writing and signed by both parties.

      7.    <u>No Waiver</u>.   No waiver of a breach, failure of any condition, or any right or remedy contained in or granted by this Agreement will be effective unless it is in writing and signed by the party waiving the breach, failure, right, or remedy. No waiver of any breach, failure, right, or remedy will be deemed a waiver of any other breach, failure, right, or remedy, whether or not similar, nor will any waiver constitute a continuing waiver unless the writing so specifies.

      8.    <u>Attorneys' Fees</u>. In any litigation, arbitration, or other proceeding by which one party either seeks to enforce its rights under this Agreement (whether in contract, tort, or both) or seeks a declaration of any rights or obligations under this Agreement, the prevailing party will be awarded reasonable attorney fees, together with any costs and expenses, to resolve the dispute and to enforce the final judgment.

      9.    <u>Governing Law</u>. This Agreement, and any dispute arising from the relationship between the parties to this Agreement, shall be governed by, construed and determined in accordance with the Laws of the State of Georgia, without regard to its conflict of laws rules. Any dispute that arises under or relates to this Agreement (whether contract, tort, or both) shall be resolved in the Superior Court of Toombs County, Georgia, and the parties expressly waive any right they may otherwise have to cause any such action or proceeding to be brought or tried elsewhere, waive all defenses of lack of personal jurisdiction and forum non conveniens.

10.     Severability.  Any provision of this Agreement that in any way contravenes the law of any state or country in which this Agreement is efiective will, in that state or country, to the extent the law is contravened, be considered separable and applicable and will not affct:t any other provision or provisions of this Agreement

11.     Binding Effect. This Agreement will inure to the benefit of and be binding on the successors and assigns of Shipper and Employee.

12.     Integration.  This Agreement and all other agreements and exhibits referred to in this Agreement constitute the final, complete, and exclusive statement of the terms of the agreement between the parties pertaining to the subject matter of this Agreement and supersede all prior and contemporaneous understandings or agreements of the parties.  No party has been induced to enter into this Agreement by, nor is any party relying on, any representation or warranty outside those expressly set forth in this Agreement.

DATED this __ day of September, 2014.     SHIPPER:

SAN MIGUEL PRODUCE, INC.

By: _____
     Roy Nishimori, President

DATED this ___ day of September, 2014.   GROWER:

L. G. HERNDON, JR. FARMS, INC.

By: _____
     L. G. (Bo) Herndon, President

3

# ADDENDUM D

## SHIPPER'S REGIONS OF DISTRIBUTION

Shipper's primary region of distribution will be the Midwest/Eastern States and noted on the map below. There will be some regional and/or national companies that will prefer to continue to pick up at San Miguel on the West Coast to service some of these states/distribution areas however, based on conversations with most customers in this "Eastern Division" they prefer pulling from the East Coast plant, GA.

Some states such as Texas, for example may be split in half with the western half pulling from the Western Division.

In addition to the United States there may be some Canadian regions that may prefer to pull from the Eastern Division as well.



Some states, such as Texas, may need to pull from both West and East plants due to customer preference.

_____ **Initialed by Grower**        _____  Initialed by Shipper

# EXHIBIT 2

 **USDA** Agricultural Marketing Service

300 W. Congress St., Room 7T
Federal Building, Box 30
Tucson, AZ 85701

March 2, 2016

REPLY REFER TO:
PACA FILE: 10,001 File

HALL LAW GROUP, PC
ATTN: J. MICHAEL HALL
5 OAK STREET
STATESBORO, GEORGIA 30458

Dear Mr. Hall:

Enclosed is your correspondence and credit card authorization received on behalf of L.G. Herndon Jr. Farms, Inc., intended as an informal complaint filed under the Perishable Agricultural Commodities Act (PACA) against San Miguel Produce, Inc.

Upon further review of the Grower-Shipper Agreement we are unable to open your complaint because based on line item 24 Governing Law and Jurisdiction included in the complaint which states "any dispute arising from the relationship between the parties to this Agreement, shall be governed by, construed and determined in accordance with the Laws of the State of Georgia, without regard to its conflict of rules. Any Dispute that arises under or relates to this Agreement (whether contract, tort, or both) shall be resolved in the Superior Court of Toombs County, Georgia, and the parties expressly waive any right they may otherwise have to cause any such action or proceeding to be brought or tried elsewhere, waive all defenses of lack or personal jurisdiction and forum non conveniens.

If you have any questions, contact Jessica Villegas at (800) 495-7222, option 5.

Sincerely,

Brian D. Wright
Assistant Director, Western Regional Office
PACA Division

Enc.

# EXHIBIT 3

IN THE SUPERIOR COURT OF TOOMBS COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| L.G. HERNDON JR. FARMS, INC. | § | |
| | § | |
| **Plaintiff,** | § | CIVIL ACTION NO. *16-CV-200* |
| v. | § | |
| | § | |
| SAN MIGUEL PRODUCE, INC., ROY I. | § | |
| NISHIMORI, and JANIS BERK, | § | |
| | § | |
| **Defendants.** | | |

## COMPLAINT FOR DAMAGES AND DECLARATION OF TRUST STATUS

COMES NOW, L.G. Herndon Jr. Farms, Inc., Plaintiff, and files this Complaint for Damages and Declaration of Trust Status against Defendants San Miguel Produce, Inc., Roy I. Nishimori, and Janis Berk as follows:

### I.

### JURISDICTION AND VENUE

1. Jurisdiction and venue is proper with this Court pursuant to OCGA §§ 9-10-91 and 9-10-93. Further the contract dated September 17, 2014 (the "Contract") attached hereto as Exhibit A between Defendant San Miguel Produce, Inc. and the Plaintiff provides in pertinent part "[a]ny dispute that arises under or relates to this Agreement (whether contract, tort, or both) shall be resolved in the Superior Court of Toombs County, Georgia, and the parties expressly waive any right they may otherwise have to cause any such action or proceeding to be brought or tried elsewhere."

### II.

### PARTIES

2. Plaintiff, L.G. Herndon Jr. Farms, Inc. ("Herndon" or Plaintiff) is a Georgia corporation with its principal place of business in Lyons, Toombs County, Georgia. Herndon is a grower and

shipper of perishable agricultural commodities in interstate and international commerce and is licensed by the United States Department of Agriculture under the Perishable Agricultural Commodities Act ("PACA") and holds PACA License Number 19900056.

3.   Defendant San Miguel Produce, Inc. ("San Miguel") is a California corporation with its principal office in Oxnard, California.   San Miguel is a dealer of perishable agricultural commodities in interstate and international commerce and is licensed by the United States Department of Agriculture under PACA and holds PACA license number 19791126.  Defendant San Miguel has operated as a produce dealer in the State of Georgia, but has failed to obtain a produce dealer's license from the Georgia Department of Agriculture as required under OCGA § 2-9-1, *et seq.*  San Miguel is subject to the jurisdiction and venue of this Court and may be served through its registered agent, Roy I. Nishimori, at 4444 Navalair Road, Oxnard, California 93033.

4.   Defendant Roy I. Nishimori ("Nishimori") is an individual and is or was an officer, director, member, or shareholder of San Miguel and in that capacity controlled or was in a position to control the assets of San Miguel.   Upon information and belief, Nishimori is a resident Oxnard, California.  Nishimori visited the State of Georgia on various occasions related to both the negotiation and San Miguel's performance of the Contract.   Nishimori is subject to the jurisdiction and venue of this Court.

5.   Defendant Janis Berk ("Berk") is an individual and is or was an officer, director, member or shareholder of San Miguel and in that capacity controlled or was in the position to control the assets of San Miguel.   Upon information and belief, Berk is a resident of Oxnard, California.  Berk visited the State of Georgia on various occasions related to both the negotiation and San

Miguel's performance of the Contract.  Berk is subject to the jurisdiction and venue of this

Court.

6.  All conditions precedent to the relief sought herein have been performed, occurred, or

have been waived.

## III.
## GENERAL ALLEGATIONS

7.  This action is brought to enforce the trust provisions of P.L. 98-273, the 1984

Amendment to Section 5 of the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. §

499e(c), for breach of contract and the general provisions of liability for violations of Section 2

of PACA.

8.  In a series of transactions, and pursuant to the Contract, Plaintiff sold, shipped and

delivered fresh produce to Defendant San Miguel.  Defendant San Miguel however, has not paid

the agreed price for these commodities leaving a balance owed of $486,095.83.

9.  Defendant San Miguel accepted the produce from Plaintiff.

10. At the time of receipt/acceptance of the produce by Defendant San Miguel, Plaintiff

became a beneficiary in a statutory trust designed to assure payment to produce suppliers.  The

trust consists of all produce or produce-related assets, including all funds commingled with funds

from other sources and all assets procured by such funds, in the possession or control of

Defendants since the creation of the trust.

11. Plaintiff preserved its interest in the PACA trust in the amount of $486,095.83 and

remains a beneficiary until full payment is made for the produce.

## IV.
## FIRST CAUSE OF ACTION
### (Breach of Contract – San Miguel)

12. Plaintiff realleges and incorporates by reference the allegations contained paragraphs 1

3

through 11 of this Complaint as though fully set forth in this paragraph 12.

13. In a series of transactions, Plaintiff sold, shipped and delivered produce to Defendant San Miguel. Defendant San Miguel accepted all such produce without objection.

14. At or about the date of each of the transactions described above, Plaintiff forwarded to Defendant San Miguel invoices for each transaction that set forth in detail the amount owed for the produce purchased from Plaintiff. A report of all outstanding amounts due and owing by Defendant San Miguel is attached hereto as Exhibit B.

15. Plaintiff has demanded that Defendant San Miguel pay the $486,095.83 due and owing for the produce sold and delivered.  Defendant San Miguel has failed and refused and continues to fail and refuse to pay Plaintiff.

16. Defendant San Miguel is subject to the provisions of O.C.G.A. § 2-9-1, *et seq*.

17. Defendant San Miguel has operated illegally as a produce dealer without obtaining a license as required by O.G.C.A. § 2-9-2.

18. Defendant San Miguel failed to procure an inspection of any produce delivered by and sold by Plaintiff to Defendant San Miguel in conformity with O.C.G.A. § 2-9-11.1.

19. As a direct and proximate result of Defendant San Miguel's failure to remit payment due to the Plaintiff as described above, Plaintiff has suffered losses in the amount of $486,095.83. Plaintiff has incurred attorney's fees and other expenses in its efforts to recover the amounts owed on the unpaid invoices.  Pursuant to the Contract, Plaintiff is entitled to its reasonable attorney's fees incurred in connection with the pursuit of the collection of funds owing including the filing of suit.  The Contract reads in part:

> If any party shall bring any action against the other party under this Agreement, the prevailing party in such action shall be entitled to judgment for reasonable attorneys' fees and costs to be fixed by the court, including without limitation, the cost of collection of any judgment awarded by the court.

4

20.  Pursuant to O.C.G.A. § 13-1-11 all provisions contained in the Contract allowing for the accrual of attorney fees will be enforced unless within ten (10) days of service of the instant complaint all amounts now due are paid in full.  Demand for payment of the $486,095.83 is hereby made.

21. Pursuant to O.C.G.A. § 7-4-16, Plaintiff is entitled to interest at the commercial rate of one and one-half percent per month on each invoice for produce delivered.

22. As a result of its illegal operations as a produce dealer in Georgia, Defendant San Miguel is prohibited from claiming any offsets to which it might be entitled against the contract claims of Plaintiff.

## V.
## SECOND CAUSE OF ACTION
### (Enforcement of Statutory Trust Provisions of PACA - All Defendants)

23. Plaintiff realleges and incorporates by reference paragraphs 1 through 22 of this Complaint as though fully set forth in this paragraph 23.

24.  At all times relevant Plaintiff was engaged in the business of selling and/or shipping perishable agricultural commodities as defined by PACA [7 U.S.C. § 499a(4)].

25. The perishable agricultural commodities that are the subject of the First Cause of Action were purchased and sold in or in contemplation of interstate and/or foreign commerce.

26. Plaintiff is a licensee under PACA.  Pursuant to the regulations promulgated under PACA, the following legend appeared on each invoice sent to Defendant San Miguel.

> The perishable agricultural commodities listed on this invoice are subject to the statutory trust authorized by Section 5(c) of the Perishable Agricultural Commodities Act 1930 (7 U.S.C. 499e(c)).  The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sales of these commodities until full payment is received.

5

Pursuant to 7 U.S.C § 499e(c)(1)-(4) of PACA, upon delivery of its produce to Defendant San Miguel, Plaintiff became the beneficiary of a floating, non-segregated statutory trust on all of Defendant San Miguel's perishable agricultural commodities, and any receivables or proceeds from the sale of such perishable agricultural commodities or products or assets derived therefrom.

27. Pursuant to the statutory trust provisions of PACA [7 U.S.C. § 499e(c)(1)-(4)], Plaintiff has performed and fulfilled all duties required to preserve its respective PACA trust benefits in the total amount of $486,095.83, plus interest, in all PACA trust assets under the control of or in the possession of Defendants.

28. Pursuant to PACA, Defendants are the statutory trustees of the PACA trust assets in their possession or under their control.  The PACA trust requires that Defendants hold and preserve all goods, inventories, proceeds and receivables in trust for the benefit of Plaintiff until full payment has been made to Plaintiff.   Plaintiff is informed and believes and thereon alleges that Defendants have failed to maintain the trust assets and keep them available to satisfy Defendants' obligations to Plaintiff in that Defendants have dissipated PACA trust assets in violation of Section 499(b)(4) of PACA and the regulations enforcing the PACA trust provisions, 7 C.F.R. §46.46.   Defendants have failed to perform the requirements of these statutory trust provisions, express and implied, and have breached their fiduciary duties to maintain the trust assets, all in violation of Section 499(b)(4) of PACA and the regulations enforcing the PACA trust provisions, express and implied, and have breached their fiduciary duties to maintain the trust assets, all in violation of Section 499(b)(4) of PACA and the regulations enforcing the PACA trust provisions, 7 C.F.R. §46.46.

6

29. Plaintiff is informed and believes and upon that basis alleges that during all relevant times, Individual Defendants transferred or diverted the trust assets and are continuing to transfer or divert trust assets — including receivables or proceeds derived from the sale of produce purchased from Plaintiff — to their own use and/or to an unknown third party or parties in violation of their statutory duties under PACA, 7 C.F.R. §46.46(c), to preserve the trust assets for the benefit of Plaintiff. The statutory trust created by PACA unequivocally gives priority to Plaintiff's interest in all inventories of products derived from perishable agricultural commodities and in any receivables or proceeds from the sale of such commodities or products that have been transferred to secured or unsecured creditors.

30. As a direct and proximate cause and result of the wrongful acts and omissions of Defendants, Plaintiff has suffered the cumulative loss of $486,095.83, plus interest, all of which qualifies for protection under the PACA trust.

## VI.

### THIRD CAUSE OF ACTION
### (Failure to Account and Pay Promptly – San Miguel)

31. Plaintiff realleges and incorporates by reference paragraphs 1 through 30 of this Complaint as though fully set forth in this paragraph 31.

32. Plaintiff has repeatedly demanded that Defendant San Miguel pay the $486,095.83 past due for the produce sold and delivered to San Miguel as described above. Despite these demands, Defendant San Miguel has failed and refused to truly, correctly and accurately account for and make full payment of the proceeds for the greens sold and delivered to it by Plaintiff. Therefore, Defendant San Miguel has failed to perform the requirements of the contracts of sale, express and implied, has breached its duty to account and pay for the produce, and has diverted

PACA trust assets to third parties, all in violation of the PACA, 7 U.S.C. § 499e *et.seq.*, and the regulations enforcing PACA.

33. As a direct and proximate cause and result of the wrongful acts and omissions of Defendant San Miguel as alleged above, Plaintiff has suffered the cumulative loss of $486,095.83, plus interest and attorney's fees.

## VII.
## FOURTH CAUSE OF ACTION
### (For Declaratory Relief – All Defendants)

34. Plaintiff realleges and incorporates by reference paragraphs 1 through 33 of this Complaint as though fully set forth in this paragraph 34.

35. An actual controversy has arisen and now exists relating to the rights and duties of Defendants and Plaintiff because Plaintiff contends that the PACA trust requires Defendants to preserve and immediately surrender to Plaintiff the trust assets for the benefit of Plaintiff until it is fully paid and Defendants have failed or otherwise refused to acknowledge the validity of the statutory trust provisions and/or Plaintiff's priority interest in the PACA trust assets.

36. Plaintiff seeks an Order of this Court declaring that its PACA trust claims are superior to and have priority as against any and all claims which Defendants or any other third party might assert to the accounts receivable, inventory and proceeds of Defendants, to the extent such receivables, inventory and proceeds constitute the corpus of the PACA trust funds to which Plaintiff is a beneficiary. Any perfected security or unsecured interest which Defendants or any other third party might have in Defendants' accounts receivable, inventory, equipment or proceeds is secondary and specifically avoidable, as a matter of law, to satisfy payments to PACA trust beneficiaries such as Plaintiff.

37. Further, Plaintiff seeks a declaratory judgment from this Court establishing (1) that the trust funds never became property of Defendants, (2) that Plaintiff's trust claim under the PACA amendment is superior to and takes priority over Defendants' secured and unsecured claims, if any, to Defendants' accounts receivable, inventory, equipment and the proceeds thereof, and (3) that only funds in excess of the trust funds necessary to pay the PACA trust claims are property of Defendants, possibly subject to a third party's liens or claims, if such are established. 7 U.S.C. §499(b)(4); 7 C.F.R. §46.46; 7 C.F.R. §46.33.

## VIII.
### FIFTH CAUSE OF ACTION
**(Constructive Trust Against Packing Equipment Located in Toombs County, Georgia Constituting a Part of the PACA Trust *Res* of Defendant San Miguel)**

38. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 37 of this Complaint as though fully set forth in this paragraph 38.

39. Defendant San Miguel owns certain packing equipment that was purchased on or around March 2014 and September 2014 and is located at 5558 US Highway 1 South, Lyons, Georgia 30436 (the "Packing Equipment"). The Packing Equipment was leased to a company designated as Robo Produce, LLC pursuant to a lease attached as Exhibit C. The Packing Equipment is the sole portion of the PACA trust *res* of Defendant San Miguel that is located within the State of Georgia. The Packing Equipment constitutes part of the *res* of the PACA trust of Defendant San Miguel.

40. Defendants presently control Packing Equipment.

41. Plaintiff is entitled to the imposition of a constructive trust on the interests of Defendants in the Packing Equipment because such assets remain PACA trust assets for the benefit of PACA trust creditors such as Plaintiff.

IX.
## SIXTH CAUSE OF ACTION
### (Breach of Contract for Costs Incurred for Produce Destroyed)

42.  Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 41 of this Complaint as though fully set forth in this paragraph 42.

43.  Pursuant to Defendant San Miguel's request Plaintiff undertook efforts to grow produce for the planting of the 2016 crop year.  Plaintiff incurred certain expenses and costs in having seeds planted in greenhouses for the anticipated crop.

44.  Subsequent to the request by Defendant for Plaintiff to grow crops for the 2016 crop year, Defendant San Miguel terminated the Contract.

45. Plaintiff incurred expenses totally $26,103 in greenhouse costs to plant the crop and later to dispose of the crop.

46.  Plaintiff detrimentally relied on the promises of Defendant San Miguel in incurring the expense related to the 2016 crop.

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

1.   Process issue and Defendants be served as provided by law;

2.   That Plaintiff have Judgment against Defendant San Miguel Produce, Inc. under Counts IV and VI in the amount of $486,095.83 for unpaid invoices for produce delivered, interest at the commercial rate of one and one-half percent per month on the unpaid balance of each invoice from its due date; attorney fees pursuant to O.C.G.A. § 13-1-11 in the amount of ten (10%) percent of the amount of principal and interest owing, and all costs of court;

3.   That Plaintiff have Judgment against Defendant San Miguel Produce, Inc. under Count IX in the amount of $26,103 for costs incurred;

4.      That Plaintiff have Judgment against Defendants San Miguel Produce, Inc., Roy I. Nishimori and Janis Berk, jointly and severally, under Count V in the amount of $486,095.83;

5.      That the Court enter a Declaratory Judgment under Counts VII and VIII finding that (1) the trust funds never became property of Defendants, (2) that Plaintiff's trust claim under PACA in the amount of $486,095.83 is superior to and takes priority over Defendants' secured and unsecured claims, if any, to Defendants' accounts receivable, inventory, equipment and the proceeds thereof, and (3) that only funds in excess of the trust funds necessary to pay the PACA trust claims are property of Defendants, possibly subject to a third party's liens or claims, if such are established, 7 U.S.C. §499(b)(4); 7 C.F.R. §46.46; 7 C.F.R. §46.33, and (4) all assets of Defendant San Miguel Produce, Inc. including the Packing Equipment are subject to a trust in favor of Plaintiff pursuant to 7 U.S.C. § 499(b)(4) and the regulations enforcing the PACA trust provisions, 7 C.F.R. §46.46 for all unpaid amounts now due the Plaintiff;

6.      That Plaintiff shall have a trial by jury; and

7.      That Plaintiff be awarded such other and further relief as this Court may deem just and appropriate.

DATED: April 5, 2016.

Attorneys for Plaintiff

_J. Michael Hall_

J. Michael Hall
Hall Law Group, PC
Attorney for L.G. Herndon Jr. Farms, Inc.
2036 Highway 21 S
Springfield, GA 31329

11

16-cv-200

Telephone (912) 754-7078
E-Mail mhall@hlg-pc.com
Georgia State Bar No. 319333

And

*Craig A. Stokes by express permission MWH*

Craig A. Stokes
Stokes Law Office LLP
Attorney for L.G. Herndon Jr. Farms, Inc.
3330 Oakwell Court, Suite 225
San Antonio, TX 78218
Telephone (210) 804-0011
E-Mail cstokes@stokeslawoffice.com
Georgia State Bar No. 774978

FILED BY TOOMBS COUNTY
CLERK OF COURTS
2016 APR -5  PM 3: 26

12



16-CV-200

## GROWER - SHIPPER AGREEMENT

This GROWER - SHIPPER AGREEMENT ("Agreement") is made and entered on this 12th day of September, 2014 by and between San Miguel Produce, Inc., a California corporation ("Shipper"), and L. G. Herndon, Jr. Farms, Inc. (Grower).

### RECITALS

A.    Shipper is an established grower, processor, and distributor of fresh cut greens in California and is the owner of the national trademark names "Cut 'N Clean Greens", "Jade", "Cut 'N Clean Greens Organic", "San Miguel Produce", and "San Miguel Produce Organic".

B.    Shipper has a strong marketing position in the United States with its "Cut 'N Clean" and related brands and is entering into a Co-Packing Agreement concurrently herewith with ROBO PRODUCE LLC to provide quality raw products from local regions, to process fresh cut products, and to ship its branded products to customers.

C.    Grower is a grower and shipper of fresh vegetables in Georgia.

D.    Grower and Shipper enter into this Agreement to create a mutually beneficial business relationship with respect to the production and distribution of Shipper's "Cut 'N Clean Greens" brand.  The parties by this Agreement are entering into a contractual growing arrangement.  This is not a joint venture or a partnership.

### AGREEMENT

1.    Term

The initial term of this Agreement shall be for five (5) years commencing on the 1st day of November, 2014.

2.    Grower's Responsibilities

Grower shall have the following responsibilities:

a.    Growing, harvesting and delivering to ROBO PRODUCE LLC's production facility in Toombs County, Georgia fresh produce, crops and varieties of raw vegetables, hereinafter referred to as "Crops," in such quantities and prices as described in Addendum A, attached, and as may be modified in writing by the Parties from time to time during the term of this Agreement.

(4)



_____ Initial by Grower

**EXHIBIT**

**A**

_____ Initialed by Shipper

FILED BY TOOMBS COUNTY
CLERK OF COURTS
2016 APR -5 PM 3:26

b.      Grower shall plant and grow the Crops in a farmer like manner, in accordance with the best farming standards and practices prevailing in the area in which they are to be grown and according to the specifications provided by Shipper.

c.      Grower shall harvest, grade and deliver the Crops in accordance with best industry standards and practices and as specified from time to time by Shipper, and in accordance with all federal, state and local laws, rules and regulations.

d.      Grower shall provide all labor and equipment necessary to grow, harvest, grade and transport the Crops to the ROBO PRODUCE LLC processing facility in Toombs County, Georgia at Grower' sole cost and expense.

e.      The Crops must meet Shipper's quality and product standards as set forth in Addendum B, attached, and as may be modified in writing by the Parties from time to time during the term of this Agreement.

f.      Grower shall make a good faith effort to grow Crops in sufficient quantity to meet the anticipated volume of orders set forth in Addendum A, attached. Grower agrees that in the event that weather or other circumstances prohibit production sufficient to cover Shipper's orders, Grower will take steps to cover the orders from production of other growers at the same contract price. In the event that Grower is unable to obtain product at the same contract price, Grower and Shipper will negotiate a "seasonal price" to cover the cost of product to meet Shipper's orders. All Crops from whatever source shall be invoiced to Shipper by Grower.

g.      Implement and farm GAP's following the California Leafy Greens Marketing Agreement (LGMA) metrics and protocols.

h.      Hydro cool the Crops prior to delivery to ROBO PRODUCE LLC's processing facility located in Toombs County, Georgia.

i.      Invoice Shipper on a weekly basis for all amounts and sums due under the terms of this Agreement.

3.      Shipper's Responsibilities

a.      Purchase from Grower the Crops set forth in Addendum A, attached, as the same are harvested during the calendar year, including such Crops as may be provided pursuant to Section 2. f, above.


_____Initial by Grower

2


_____Initialed by Shipper

b.      Manage all sales and marketing of packaged fresh-cut products. Shipper will sell and market all products to regional and national accounts.

c.      Provide sales and marketing opportunities for Grower's bunch/bulk product sales.

d.      Pay Grower within thirty (30) days of date of invoice for Crops delivered to the ROBO PRODUCE LLC processing facility in Toombs County, Georgia in accordance with the SCHEDULE set forth in Addendum B, attached.

4.      Division of Profits

a.      In addition to the payment for the Crops, which Grower shall sell to Shipper at cost, provided for above, Shipper and Grower agree to divide equally the profits from the sale of all products processed, packed and shipped through the ROBO PRODUCE LLC facility in Toombs County, Georgia. However, Grower shall only be entitled to a division of profits, if any, with respect to those Crops not grown by Grower, but obtained from third parties to cover orders as set forth in Section 2.f above, if Grower has actively participated in securing and delivering the cover Crops to the ROBO PRODUCE LLC facility.

b.      Shipper shall keep sufficient records to identify the nature and amount of all costs incurred in the production of a final product marketed for sale by Shipper and all income received from the sale of all products processed, packed and shipped through the ROBO PRODUCE LLC facility in Toombs County, Georgia and shall provide Grower with not less than monthly reports of sales income and expenses. The costs shall include, but are not limited to, production, labor, materials, food safety, warehousing, facilities, equipment, shipping costs, and administrative costs. Grower shall be entitled to inspect and copy all original documents necessary to or utilized in the calculation of profit and loss; provided, however, Grower shall not be entitled to sales data pertaining to Shipper's particular customers. Grower shall be provided with copies of all such documents within fifteen (15) days of receipt of a written request therefore. The copies provided to Grower shall be delivered to Grower at the address provided hereinafter with regard to notices.

c.      Shipper shall be entitled to receive an administrative fee on the sale of the packaged product to Shipper's customers as set forth on Addendum A, attached. The


Initial by Grower

3


Initialed by Shipper

administrative fee shall be adjusted annually. This fee is one of the costs included in Section 4.b, above.

      d.     Profits shall be calculated and reported to Shipper and Grower on a monthly basis and distributed equally between Shipper and Grower at such times as agreed to by Shipper and Grower.

5.    <u>Termination for Cause</u>

      It is the intention of the parties that neither Party shall be entitled to terminate this Agreement during the term set forth above, except for cause, and in accord with the provisions set forth herein. "Cause" shall be defined as a material breach of this Agreement, which breach is not cured within thirty (30) days of receipt of written notice from the non-breaching Party specifying and describing the nature of the material breach. If the material breach is not cured within thirty (30) days of receipt of the written notice, the Parties agree to submit all issues of breach and termination to mediation within sixty (60) days of receipt of written notice of a breach. If mediation does not result in a resolution of the breach, the Party asserting a material breach of this Agreement may terminate it for cause upon thirty (30) days written notice of the date upon which termination shall be effective. To the extent possible, the Parties shall continue to perform in accord with this Agreement after receipt of notice of a material breach until such time as this contract is terminated as set forth herein.

6.    <u>Termination for Bankruptcy/Insolvency.</u>

      Upon the occurrence of any of the following circumstances, a Party may terminate this Agreement effective immediately, upon written notice if:

      a.    the other Party becomes the subject of a voluntary petition in bankruptcy or any voluntary proceedings relating to insolvency, receivership, liquidation or composition for the benefit of creditors;

      b.    the other Party becomes the subject of an involuntary petition in bankruptcy or any involuntary proceeding relating to insolvency, receivership, liquidation, assignment or composition for the benefit of creditors, if such petition is not dismissed within sixty (60) days;

      c.    the other Party effectively goes out of business or ceases substantially all of its business operations within the regions described in Addendum A, attached; or

 Initial by Grower

4

 Initialed by Shipper

d.      the termination of any of the following Agreements related to the goals of the Parties as set forth herein, to wit:  (1) an Equipment Lease entered into between the Parties regarding the processing equipment to be used by the Co-Packer, and (2) Co-Packing Agreement between Shipper herein and ROBO PRODUCE LLC relating to the supply of Produce to be processed and packed by Co-Packer.

7.     <u>Mediation</u>

The parties agree to mediate any dispute or claim arising out of this Agreement before resorting to any legal action.  Mediation fees, if any, shall be apportioned equally among the parties involved.   If any party commences legal action without first attempting to resolve the matter through mediation, or refuses to mediate after a request is made, then that party shall not be entitled to recover attorney's fees, even if attorney's fees would otherwise be available to that party in any such other proceeding.

8.     <u>Non-Compete and Non-Disclosure Agreements</u>

a.      Grower will not compete with Shipper by providing and selling products and/or services to other processors and competitors as set forth herein.

b.      This non-competition provision shall apply only to the territories in which Shipper conducts its business operations, including but not limited to, the regions described in Addendum D attached hereto..    This non-competition agreement shall continue during the term of this Agreement, or any subsequent commercial relationship between Grower and Shipper

c.      Non-compete

Grower agrees not to compete in the sale, marketing, or distribution of like or substantially like products or services as those involved in Shipper's business to, either other processor or competitors of Shipper, or to any business, individual, or company whose identity was gathered through the commercial relationship that is being contracted for, without written consent of Shipper.

d.      Non- Disclosure

Grower also agrees not to disclose any proprietary information about Shipper's products, customers, brands, processes or program as set forth in the nondisclosure attached hereto as Addendum C.

 Initial by Grower

5

 Initialed by Shipper

9.   Insurance

Grower shall carry the appropriate insurance, naming Shipper as an additional insured, approved by Shipper. Grower shall provide Shipper with a copy of the insurance policy and a certificate of insurance evidencing such coverage and Grower shall notify Shipper in the event of any cancellation or change in the policy.

10.   Pesticides, Herbicides and Other Chemical Usage

Grower represents and warrants that all Crops grown pursuant to this Agreement will be grown using only herbicides, pesticides and other chemicals which are registered under the Federal Insecticide, Fungicide and Rodenticide Act, as amended (7 U.S.C. Section 136, et seq.),and all other applicable federal, state and local regulations and laws concerning herbicides, pesticides and other chemicals. Grower will immediately notify Shipper of any known or suspected violations of chemical usage on the Crops or on any surrounding crops. Further, upon request, Grower will provide Shipper with reports of current pesticide use for the real property on which the Crops are to be grown.

11.   Marketing

a.   Shipper shall have the exclusive right to receive, take possession of, market, and sell the Crops under its own labels, or under such other labels as it may choose. Shipper shall contract with ROBO PRODUCE LLC to receive, cool, store, load, and distribute the Crops in accordance with the local industry standards and practices and Shipper's direction.

b.   In no event is this Agreement to be deemed or construed as a guarantee or warranty of any specific price, marketing, or distribution of either the Crops or a guarantee or warranty that Shipper will be able to obtain for the Crops the average price obtainable for similar commodities on the sale date.

c.   Shipper may reject any of the Crops delivered pursuant to this Agreement that do not comply with the conditions, specifications and requirements set forth in this Agreement. Shipper may charge all costs, freight, and expenses paid or incurred by Shipper in connection with the receipt and return of any such rejected crop to the Grower. Shipper may reject in full or in part any delivery of the Crops made or tendered if a substantial portion of the Crops, as determined by Shipper, does not conform to the



6



specifications set forth in this Agreement.  In the event that Shipper makes any determination that it intends to reject any delivery or partial delivery of the Crops, Shipper must first confer with Grower regarding Shipper's determination and present Grower with evidence which justifies Shipper's conclusion that the Crops do not conform to the specifications set forth in this Agreement. In the event that Grower disagrees with Shipper's determination, then the parties shall arrange for a U.S.D.A. inspection of the Crops which are subject of the dispute. The costs of the U.S.D.A. inspection shall be paid by the party losing the dispute.

12.    Label Protection

Shipper has the exclusive rights to use all trademarks and trade names used on the cartons and packing materials used to pack the Crops. Grower agrees that packing materials which contain Shipper's trademarks and trade names are to be used by Grower exclusively for packing the Crops. Without exception, all unused packing materials shall be returned to Shipper for credit. The provisions of this Section 12 shall survive and continue despite any termination of the Agreement.

13.    Grower Employees, Contractors and Agents

a.    All persons performing work in connection with the operations or services performed by Grower shall be employees, contractors, or agents of Grower. Grower shall determine the method, means, and manner of performance of work of Grower's employees, agents or contractors. Grower agrees to indemnify and hold Shipper harmless from and against any and all claims arising from injury or damage to persons or property caused by Grower or its employees, contractors or agents.

b.    Grower and Shipper operate independent businesses, and each party is an independent contractor to the other party and neither is an employee or agent to the other.  Grower shall be solely responsible for the selection, hiring, firing, supervision, assignment, direction, setting of wages, hours, and working conditions, and adjustment of grievances of Grower's employees, contractors and agents. Grower shall determine the method, means, and manner of the performance of the work of Grower's employees, contractors, and agents, if any, and of their performance of this Agreement. Neither Shipper nor any of Shipper's quality control personnel or other employees shall have any right or authority to direct or control those persons in any respect whatsoever,

7



_____ Initial by Grower                        _____ Initialed by Shipper

including, but not limited to, hiring, firing, disciplining, directing, supervising and setting wages and working conditions and adjusting grievances.

14.   Force Majeure

Neither party to this Agreement shall be required to perform, its obligations under this Agreement during any period in which nonperformance is caused by (a) strikes, or work stoppages; (b) war, hostilities, or national emergencies; (c) acts of God, the elements, mechanical breakdowns, or power failure; (d) orders issued by any local, state or federal agency of government as to any part of the growing, harvesting, packing and selling of the Crops; or (e) causes beyond the control of the party unable to perform, including eminent domain actions. In the event that a Force Majeure Event persists for more than ninety (90) consecutive days, the unaffected Party may thereafter terminate this Agreement for convenience upon written notice to the affected Party.

15.   Warranty

The respective Parties hereby warrant, one to the other, that this Agreement has been approved by resolution of the appropriate board or other corporate authority in accordance with the by-laws and/or operating agreements of the Party and that the undersigned representatives executing this Agreement on behalf of the Party are properly authorized and empowered to do so.

16.   Notices

All notices to be given under this Agreement shall be in writing and considered delivered when mailed to the parties by certified mail, postage prepaid, on the third day after mailing, or when hand delivered, on the date of service, to the respective addresses as follows:

Shipper:   San Miguel Produce, Inc.,
A California Corporation
Attention: Roy Nishimori
4444 Navalair Road
Oxnard, CA 93033

Grower:   L. G. Herndon, Jr. Farms, Inc.
A Georgia Corporation
Attention: L. G. (Bo) Herndon, Jr., President
1188 Lawson Road
Lyons, Georgia 30436

8

_____ Initial by Grower            _____ Initialed by Shipper

17.   Binding Agreement

This Agreement shall be binding upon and inure to the benefit of the heirs, executors, administrators, successors and assigns of the parties hereto. Notwithstanding the foregoing, neither party may assign this Agreement without the prior written approval of the other party.

18.   Modifications

No change or modifications of this Agreement shall be valid unless the same shall be in writing and signed by both parties hereto.

19.   Waiver of Breach

Waiver of a breach by a party to this Agreement shall not operate as a waiver of any continuing or further breach by any party. Either Party's delay or omission in exercising any right, power, or remedy pursuant to a breach or default by the other Party shall not impair any right, power, or remedy which that Party may have.

20.   Remedies

The rights and remedies of both Parties as set forth in this Agreement are not exclusive and are in addition to any other rights and remedies available to it in law or equity.

21.   Relationship of Parties

The Parties agree that both Parties are independent contractors. Neither Party shall have the right to bind, represent or act for the other Party. The Parties shall have no agency, partnership, joint venture or fiduciary duties to each other. Each Party's employees shall in no sense be considered employees of the other Party.

22.   Assignment

Neither Party shall assign any right or interest herein nor delegate any duty or obligation without the prior written consent of the other Party; any such attempted assignment shall be void.

23.   Indemnification

Each party shall indemnify, defend and hold harmless the other party from any and all liability, loss, claim, lawsuit, injury, cost, damage or expense whatsoever (including reasonable attorneys' fees and costs) arising out of, incident to, or in any

 Initial by Grower

9

 Initialed by Shipper

manner occasioned by the performance or nonperformance of any duty or responsibility under this Agreement or the applicable law by such indemnifying party.

24.    Governing Law and Jurisdiction.

This Agreement, and any dispute arising from the relationship between the parties to this Agreement, shall be governed by, construed and determined    in accordance with the Laws of the State of Georgia, without regard to its conflict of laws rules.  Any dispute that arises under or relates to this Agreement (whether contract, tort, or both) shall be resolved in the Superior Court of Toombs County, Georgia, and the parties expressly waive any right they may otherwise have to cause any such action or proceeding to be brought or tried elsewhere, waive all defenses of lack of personal jurisdiction and forum non conveniens.

25.    Drafting

The Parties have jointly participated in the negotiation and drafting of this Agreement. Each has been represented by counsel of its choosing.  If an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof will arise for or against any Party because of the authorship of any provision of this Agreement.

26.    Survival

Any obligations and duties, which by their nature extend beyond the expiration or termination of this Agreement shall survive any such expiration or termination and remain in full force and effect until fulfilled.

27.    Prior Agreements

This Agreement supersedes any and all other agreements either oral or in writing between the parties with respect to the subject of this Agreement.  This Agreement contains all of the covenants and agreements between the parties and each party to this agreement acknowledges that no representations, inducements, promises, or agreements have been made by or on behalf of any party except those covenants and agreements embodied in this Agreement.  No agreement, statement, or promise not contained in this Agreement shall be valid or binding.

_____ Initial by Grower

10

 _____ Initialed by Shipper

8.    Enforceability

a.    If any term of this Agreement is held by a court of competent jurisdiction to be void or unenforceable, the remainder of the contract terms shall remain in full force and effect and shall not be affected.

b.    The validity of this Agreement and any of its terms or provisions, as well as the rights and duties of the parties under this Agreement, shall be construed pursuant to and in accordance with the laws of the State of Georgia.

9.    Attorney's Fees

If any party shall bring any action against the other party under this Agreement, the prevailing party in such action shall be entitled to judgment for reasonable attorneys' fees and costs to be fixed by the court, including without limitation, the cost of collection of any judgment awarded by the court.

**IN WITNESS WHEREOF** the parties have executed this Agreement by their duly authorized representatives the day and year first set out above.

Dated: September 17, 2014

SHIPPER:

SAN MIGUEL PRODUCE, INC.,

A California Corporation

By: Roy Nishimori, President

Attest:

SUSAN E. MONTORIO
Commission # 1955619
Notary Public - California
Ventura County
My Comm. Expires Oct 8, 2015

GROWER:

Dated: September 12, 2014

L. G. HERNDON FARMS, INC.

A Georgia Corporation

By: L. G. (Bo) Herndon, Jr., President

Attest:

Initial by Grower

11

Initialed by Shipper

# ADDENDUM A

## PRODUCTION REQUIREMENTS BY CROP, QUANTITY, AND PRICE

## CROP YEAR 2014 - 2015

| CROP: | QUANTITY: | PRICE: |
|---|---|---|
| Fresh Cut Greens – Conventional | Schedule Attached | $ .30 per Field Lb. |
| Fresh Cut Greens – Organic | Schedule Attached | $.40 per Field Lb. |
| Fresh Cut - Jade Asian – Conventional | Schedule Attached | TBD |
| Outside Contract Seasonal Growing: | Schedule Attached | TBD |

- o Contract "seasonal" growing to be planned for in advance and negotiated by Herndon.
- o Contract price to be submitted to San Miguel for approval.

ADMINISTRATIVE FEE:

- San Miguel Produce, Inc. shall retain an Administrative Fee for each case of product packaged and sold from the Georgia facility.

- Administrative Fee:     $ 1.25 per case sold

_____ Initialed by Grower          12          _____ Initialed by Shipper

# ADDENDUM B

## PRODUCT SPECIFICATIONS

A complete and comprehensive Product Spec binder will be provided by San Miguel to Herndon Farms to assist with guidelines for growing and harvesting quality of all product varieties.

_____ Initialed by Grower                                      _____ Initialed by Shipper

# ADDENDUM C

# NON-DISCLOSURE AGREEMENT

14

_____Initial by Grower

_____Initialed by Shipper

NON-DISCLOSURE AGREEMENT

THIS NON-DISCLOSURE AGREEMENT ("Agreement@) is entered into on this 12th day of September, 2014, by and between San Miguel Produce, Inc.. a California corporation ("Shipper"), and L. G. Herndon, Jr. Farms, Inc. ("Grower").

This Agreement is entered into between Shipper and Grower in connection with that Grower Shipper Agreement executed on September 12, 2014.

1.   Definitions. As used in this Agreement the following terms have the following definitions:

"Confidential Information" includes for the purpose of this Agreement all matters disclosed by Shipper with respect to its proprietary information about Shipper's products, customers, plans, processes, or programs in connection with its fresh cut greens business under, "Cut 'N Clean Greens", "Jade", "Cut 'N Clean Greens Organic", "San Miguel Produce", San Miguel Produce Organic" and customer Private Label packs. Confidential Information is to be broadly defined and includes: (i) all information that has or could have commercial value or other utility in the business in which Shipper is engaged or in which it contemplates engaging and; (ii) all information that, if disclosed without authorization, could be detrimental to the interest of Shipper, whether or not such information is identified as Confidential Information by Shipper. By example and without limitation, Confidential Information includes all information or teaching techniques, processes, formulas, trade secrets, inventions, discoveries, improvements, research or development test results, specifications, data, know-how, formats, marketing plans, business plans, strategies, forecasts, unpublished financial information, budgets, projections, and customer and supplier identities, characteristics, and agreements.

2.   Effective Date. This agreement is entered into effective September 12, 2014.

3.   Protection of Shipper's Confidential Information.

a.    At all times, Grower will hold in trust, keep confidential, not make use of and not disclose or reveal to any third party any Confidential Information. Grower will not cause the transmission, removal, or transport of Confidential Information from the production facility located in Toombs County, Georgia or such other place of business specified by Shipper, without prior written approval of Shipper.

b.    Grower acknowledges that the unauthorized use or disclosure of Confidential Information may be highly prejudicial to the interests of Shipper, an invasion of privacy, or an improper disclosure of trade secrets.

4.   Specific Performance.

a.    Because Grower's breach of this Agreement may cause Shipper irreparable harm for which money is inadequate compensation, Shipper will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies.

b.      Grower acknowledges and agrees that the protections set forth in this Agreement are a material condition to consideration of any proposals by Shipper.

5.   Notices.   Any notice, report, or statement required or permitted under this Agreement will be considered to be given or transmitted when sent by certified mail, postage prepaid, addressed to the party for whom it is intended at its address of record: by facsimile, which notice will be effective on computer confirmation of receipt; or by courier or messenger service, which notice will be effective on receipt by recipient as indicated on the carrier's receipt. The record addresses of the parties are as follows:

    Shipper:   Roy Nishimori, President
               San Miguel Produce, Inc.
               4444 Navalair Road
               Oxnard, California 93033

    Grower:    L. G. (Bo) Herndon, Jr., President
               L. G. Herndon, Jr. Farms, Inc.
               1188 Lawson Road
               Lyons, Georgia 30436

6.   Amendment. This Agreement may be supplemented, amended, or modified only by the mutual agreement of the parties. No supplement, amendment, or modification of this Agreement will be binding unless it is in writing and signed by both parties.

7.   No Waiver.    No waiver of a breach, failure of any condition, or any right or remedy contained in or granted by this Agreement will be effective unless it is in writing and signed by the party waiving the breach, failure, right, or remedy. No waiver of any breach, failure, right, or remedy will be deemed a waiver of any other breach, failure, right, or remedy, whether or not similar, nor will any waiver constitute a continuing waiver unless the writing so specifies.

8.   Attorneys' Fees. In any litigation, arbitration, or other proceeding by which one party either seeks to enforce its rights under this Agreement (whether in contract, tort, or both) or seeks a declaration of any rights or obligations under this Agreement, the prevailing party will be awarded reasonable attorney fees, together with any costs and expenses, to resolve the dispute and to enforce the final judgment.

9.   Governing Law. This Agreement, and any dispute arising from the relationship between the parties to this Agreement, shall be governed by, construed and determined in accordance with the Laws of the State of Georgia, without regard to its conflict of laws rules. Any dispute that arises under or relates to this Agreement (whether contract, tort, or both) shall be resolved in the Superior Court of Toombs County, Georgia, and the parties expressly waive any right they may otherwise have to cause any such action or proceeding to be brought or tried elsewhere, waive all defenses of lack of personal jurisdiction and forum non conveniens.

10.   Severability.   Any provision of this Agreement that in any way contravenes the law of any state or country in which this Agreement is effective will, in that state or country, to the extent the law is contravened, be considered separable and applicable and will not affect any other provision or provisions of this Agreement

11.   Binding Effect.   This Agreement will inure to the benefit of and be binding on the successors and assigns of Shipper and Employee.

12.   Integration.   This Agreement and all other agreements and exhibits referred to in this Agreement constitute the final, complete, and exclusive statement of the terms of the agreement between the parties pertaining to the subject matter of this Agreement and supersede all prior and contemporaneous understandings or agreements of the parties.   No party has been induced to enter into this Agreement by, nor is any party relying on, any representation or warranty outside those expressly set forth in this Agreement.

DATED this __ day of September, 2014.     SHIPPER:

SAN MIGUEL PRODUCE, INC.

By: _____

Roy Nishimori, President

DATED this ___ day of September, 2014.     GROWER:

L. G. HERNDON, JR. FARMS, INC.

By: _____

L. G. (Bo) Herndon, President

3

# ADDENDUM D

## SHIPPER'S REGIONS OF DISTRIBUTION

Shipper's primary region of distribution will be the Midwest/Eastern States and noted on the map below.  There will be some regional and/or national companies that will prefer to continue to pick up at San Miguel on the West Coast to service some of these states/distribution areas however, based on conversations with most customers in this "Eastern Division" they prefer pulling from the East Coast plant, GA.

Some states such as Texas, for example may be split in half with the western half pulling from the Western Division.

In addition to the United States there may be some Canadian regions that may prefer to pull from the Eastern Division as well.



Some states, such as Texas, may need to pull from both West and East plants due to customer preference.

FILED BY TOOMBS COUNTY
CLERK OF COURTS
2016 APR -5  PM 3: 27

15

_____ Initialed by Grower                    _____ Initialed by Shipper

## Sales Orders and Outstanding Invoices
L.G. Herndon Jr. Farms, Inc.

16-CV-200

| Invoice | Invoice Date | PO Ref | Amount | Receipts | Balance | 0 - 30 | 31 - 60 | 61 - 90 | 91 - 120 | Later | Credits |
|---|---|---|---|---|---|---|---|---|---|---|---|
| San Miguel Produce   USD | | | | Credit Limit: | .00 | | | | | | |
| 8371 | Feb 01, 2016 | | 5,056.40 | .00 | 5,056.40 | 5,056.40 | .00 | .00 | .00 | .00 | .00 |
| 8363 | Jan 30, 2016 | | 5,970.00 | .00 | 5,970.00 | 5,970.00 | .00 | .00 | .00 | .00 | .00 |
| 8355 | Jan 29, 2016 | | 3,398.40 | .00 | 3,398.40 | 3,398.40 | .00 | .00 | .00 | .00 | .00 |
| 8354 | Jan 28, 2016 | | 3,464.00 | .00 | 3,464.00 | 3,464.00 | .00 | .00 | .00 | .00 | .00 |
| 8334 | Jan 26, 2016 | | 2,804.20 | .00 | 2,804.20 | 2,804.20 | .00 | .00 | .00 | .00 | .00 |
| 8326 | Jan 25, 2016 | | 6,912.00 | .00 | 6,912.00 | 6,912.00 | .00 | .00 | .00 | .00 | .00 |
| 8314 | Jan 23, 2016 | | 1,320.00 | .00 | 1,320.00 | .00 | 1,320.00 | .00 | .00 | .00 | .00 |
| 8312 | Jan 22, 2016 | | 4,406.00 | .00 | 4,406.00 | .00 | 4,406.00 | .00 | .00 | .00 | .00 |
| 8296 | Jan 20, 2016 | | 156.00 | .00 | 156.00 | .00 | 156.00 | .00 | .00 | .00 | .00 |
| 8289 | Jan 19, 2016 | | 4,946.05 | .00 | 4,946.05 | .00 | 4,946.05 | .00 | .00 | .00 | .00 |
| 8283 | Jan 18, 2016 | | 5,193.60 | .00 | 5,193.60 | .00 | 5,193.60 | .00 | .00 | .00 | .00 |
| 8275 | Jan 16, 2016 | | 4,860.00 | .00 | 4,860.00 | .00 | 4,860.00 | .00 | .00 | .00 | .00 |
| 8269 | Jan 15, 2016 | | 7,424.00 | .00 | 7,424.00 | .00 | 7,424.00 | .00 | .00 | .00 | .00 |
| 8258 | Jan 14, 2016 | | 7,806.00 | .00 | 7,806.00 | .00 | 7,806.00 | .00 | .00 | .00 | .00 |
| 8260 | Jan 14, 2016 | | 4,704.00 | .00 | 4,704.00 | .00 | 4,704.00 | .00 | .00 | .00 | .00 |
| 8261 | Jan 14, 2016 | | 8,340.00 | .00 | 8,340.00 | .00 | 8,340.00 | .00 | .00 | .00 | .00 |
| 8235 | Jan 13, 2016 | 8071024 | 3,136.00 | .00 | 3,136.00 | .00 | 3,136.00 | .00 | .00 | .00 | .00 |
| 8246 | Jan 13, 2016 | | 5,944.00 | .00 | 5,944.00 | .00 | 5,944.00 | .00 | .00 | .00 | .00 |
| 8253 | Jan 13, 2016 | | 5,208.00 | .00 | 5,208.00 | .00 | 5,208.00 | .00 | .00 | .00 | .00 |
| 8243 | Jan 12, 2016 | | 8,178.40 | .00 | 8,178.40 | .00 | 8,178.40 | .00 | .00 | .00 | .00 |
| 8244 | Jan 12, 2016 | | 7,104.00 | .00 | 7,104.00 | .00 | 7,104.00 | .00 | .00 | .00 | .00 |
| 8245 | Jan 12, 2016 | | 2,128.00 | .00 | 2,128.00 | .00 | 2,128.00 | .00 | .00 | .00 | .00 |
| 8201 | Jan 11, 2016 | 8070695 | 1,176.00 | .00 | 1,176.00 | .00 | 1,176.00 | .00 | .00 | .00 | .00 |
| 8223 | Jan 11, 2016 | | 7,824.00 | .00 | 7,824.00 | .00 | 7,824.00 | .00 | .00 | .00 | .00 |
| 8224 | Jan 11, 2016 | | 9,048.00 | .00 | 9,048.00 | .00 | 9,048.00 | .00 | .00 | .00 | .00 |
| 8233 | Jan 11, 2016 | | 1,368.00 | .00 | 1,368.00 | .00 | 1,368.00 | .00 | .00 | .00 | .00 |
| 8200 | Jan 09, 2016 | 8070693 | 2,744.00 | .00 | 2,744.00 | .00 | 2,744.00 | .00 | .00 | .00 | .00 |
| 8212 | Jan 09, 2016 | | 5,928.00 | .00 | 5,928.00 | .00 | 5,928.00 | .00 | .00 | .00 | .00 |
| 8213 | Jan 09, 2016 | | 4,989.60 | .00 | 4,989.60 | .00 | 4,989.60 | .00 | .00 | .00 | .00 |
| 8214 | Jan 09, 2016 | | 7,056.00 | .00 | 7,056.00 | .00 | 7,056.00 | .00 | .00 | .00 | .00 |
| 8215 | Jan 09, 2016 | | 5,505.60 | .00 | 5,505.60 | .00 | 5,505.60 | .00 | .00 | .00 | .00 |
| 8207 | Jan 08, 2016 | | 9,054.00 | .00 | 9,054.00 | .00 | 9,054.00 | .00 | .00 | .00 | .00 |
| 8210 | Jan 08, 2016 | | 7,392.00 | .00 | 7,392.00 | .00 | 7,392.00 | .00 | .00 | .00 | .00 |
| 8211 | Jan 08, 2016 | | 10,624.00 | .00 | 10,624.00 | .00 | 10,624.00 | .00 | .00 | .00 | .00 |
| 8003 | Jan 07, 2016 | | 6,777.00 | .00 | 6,777.00 | .00 | 6,777.00 | .00 | .00 | .00 | .00 |
| 8007 | Jan 07, 2016 | 8068778 | 4,936.75 | .00 | 4,936.75 | .00 | 4,936.75 | .00 | .00 | .00 | .00 |
| 8020 | Jan 07, 2016 | | 5,301.00 | .00 | 5,301.00 | .00 | 5,301.00 | .00 | .00 | .00 | .00 |
| 8032 | Jan 07, 2016 | 8069031 | 4,557.00 | .00 | 4,557.00 | .00 | 4,557.00 | .00 | .00 | .00 | .00 |
| 8033 | Jan 07, 2016 | 8069032 | 1,519.00 | .00 | 1,519.00 | .00 | 1,519.00 | .00 | .00 | .00 | .00 |
| 8042 | Jan 07, 2016 | | 3,960.00 | .00 | 3,960.00 | .00 | 3,960.00 | .00 | .00 | .00 | .00 |
| 8054 | Jan 07, 2016 | | 5,953.00 | .00 | 5,953.00 | .00 | 5,953.00 | .00 | .00 | .00 | .00 |
| 8056 | Jan 07, 2016 | | 4,989.60 | .00 | 4,989.60 | .00 | 4,989.60 | .00 | .00 | .00 | .00 |
| 8057 | Jan 07, 2016 | | 1,152.00 | .00 | 1,152.00 | .00 | 1,152.00 | .00 | .00 | .00 | .00 |
| 8064 | Jan 07, 2016 | | 4,989.60 | .00 | 4,989.60 | .00 | 4,989.60 | .00 | .00 | .00 | .00 |
| 8071 | Jan 07, 2016 | | 7,230.70 | .00 | 7,230.70 | .00 | 7,230.70 | .00 | .00 | .00 | .00 |
| 8075 | Jan 07, 2016 | | 513.00 | .00 | 513.00 | .00 | 513.00 | .00 | .00 | .00 | .00 |
| 8087 | Jan 07, 2016 | 8069410 | 1,898.75 | .00 | 1,898.75 | .00 | 1,898.75 | .00 | .00 | .00 | .00 |
| 8089 | Jan 07, 2016 | | 4,170.00 | .00 | 4,170.00 | .00 | 4,170.00 | .00 | .00 | .00 | .00 |
| 8097 | Jan 07, 2016 | | 5,760.00 | .00 | 5,760.00 | .00 | 5,760.00 | .00 | .00 | .00 | .00 |
| 8101 | Jan 07, 2016 | | 1,026.00 | .00 | 1,026.00 | .00 | 1,026.00 | .00 | .00 | .00 | .00 |
| 8108 | Jan 07, 2016 | | 5,043.00 | .00 | 5,043.00 | .00 | 5,043.00 | .00 | .00 | .00 | .00 |
| 8198 | Jan 07, 2016 | | 11,222.40 | .00 | 11,222.40 | .00 | 11,222.40 | .00 | .00 | .00 | .00 |
| 8202 | Jan 07, 2016 | | 7,224.00 | .00 | 7,224.00 | .00 | 7,224.00 | .00 | .00 | .00 | .00 |
| 8203 | Jan 07, 2016 | | 7,324.80 | .00 | 7,324.80 | .00 | 7,324.80 | .00 | .00 | .00 | .00 |
| 8175 | Jan 06, 2016 | 8070446 | 3,136.00 | .00 | 3,136.00 | .00 | 3,136.00 | .00 | .00 | .00 | .00 |
| 8191 | Jan 06, 2016 | | 5,376.00 | .00 | 5,376.00 | .00 | 5,376.00 | .00 | .00 | .00 | .00 |
| 8193 | Jan 06, 2016 | | 3,939.25 | .00 | 3,939.25 | .00 | 3,939.25 | .00 | .00 | .00 | .00 |
| 8179 | Jan 05, 2016 | | 5,280.00 | .00 | 5,280.00 | .00 | 5,280.00 | .00 | .00 | .00 | .00 |
| 8180 | Jan 05, 2016 | | 3,750.00 | .00 | 3,750.00 | .00 | 3,750.00 | .00 | .00 | .00 | .00 |
| 8159 | Jan 04, 2016 | 8070225 | 2,352.00 | .00 | 2,352.00 | .00 | | | | | |

FILED BY TOOMBS COUNTY CLERK OF COURTS  2016 APR -5 PM 3:27

EXHIBIT B
tabbies

Feb 24, 2016 16:51:23

Page 1 of 2

## Sales Orders and Outstanding Invoices
L.G. Herndon Jr. Farms, Inc.

| Invoice | Invoice Date | PO Ref | Amount | Receipts | Balance | 0 - 30 | 31 - 60 | 61 - 90 | 91 - 120 | Later | Credits |
|---|---|---|---|---|---|---|---|---|---|---|---|
| San Miguel Produce  USD | | | | Credit Limit: | .00 | | | | | | |
| 8161 | Jan 04, 2016 | | 7,056.00 | .00 | 7,056.00 | .00 | 7,056.00 | .00 | .00 | .00 | .00 |
| 8165 | Jan 04, 2016 | | 7,224.00 | .00 | 7,224.00 | .00 | 7,224.00 | .00 | .00 | .00 | .00 |
| 7856 | Jan 02, 2016 | | 4,536.00 | .00 | 4,536.00 | .00 | 4,536.00 | .00 | .00 | .00 | .00 |
| 7866 | Jan 02, 2016 | | 4,536.00 | .00 | 4,536.00 | :00 | 4,536.00 | .00 | .00 | .00 | .00 |
| 7867 | Jan 02, 2016 | | 5,815.50 | .00 | 5,815.50 | .00 | 5,815.50 | .00 | .00 | .00 | .00 |
| 7868 | Jan 02, 2016 | | 3,024.00 | .00 | 3,024.00 | .00 | 3,024.00 | .00 | .00 | .00 | .00 |
| 7889 | Jan 02, 2016 | 8068009 | 1,898.75 | .00 | 1,898.75 | .00 | 1,898.75 | .00 | .00 | .00 | .00 |
| 7898 | Jan 02, 2016 | | 6,489.00 | .00 | 6,489.00 | .00 | 6,489.00 | .00 | .00 | .00 | .00 |
| 7899 | Jan 02, 2016 | | 2,646.00 | .00 | 2,646.00 | .00 | 2,646.00 | .00 | .00 | .00 | .00 |
| 7900 | Jan 02, 2016 | | 4,800.00 | .00 | 4,800.00 | .00 | 4,800.00 | .00 | .00 | .00 | .00 |
| 8154 | Jan 02, 2016 | 8070209 | 784.00 | .00 | 784.00 | .00 | 784.00 | .00 | .00 | .00 | .00 |
| 8155 | Jan 02, 2016 | | 8,098.40 | .00 | 8,098.40 | .00 | 8,098.40 | .00 | .00 | .00 | .00 |
| 8156 | Jan 02, 2016 | | 2,784.00 | .00 | 2,784.00 | .00 | 2,784.00 | .00 | .00 | .00 | .00 |
| 8149 | Dec 31, 2015 | | 3,913.50 | .00 | 3,913.50 | .00 | 3,913.50 | .00 | .00 | .00 | .00 |
| 8135 | Dec 30, 2015 | 8069962 | 1,960.00 | .00 | 1,960.00 | .00 | 1,960.00 | .00 | .00 | .00 | .00 |
| 8141 | Dec 30, 2015 | | 2,852.10 | .00 | 2,852.10 | .00 | 2,852.10 | .00 | .00 | .00 | .00 |
| 8134 | Dec 29, 2015 | | 5,397.00 | .00 | 5,397.00 | .00 | 5,397.00 | .00 | .00 | .00 | .00 |
| 8136 | Dec 29, 2015 | | 3,726.00 | .00 | 3,726.00 | .00 | 3,726.00 | .00 | .00 | .00 | .00 |
| 8113 | Dec 28, 2015 | 8069761 | 1,898.75 | .00 | 1,898.75 | .00 | 1,898.75 | .00 | .00 | .00 | .00 |
| 8125 | Dec 28, 2015 | | 4,914.00 | .00 | 4,914.00 | .00 | 4,914.00 | .00 | .00 | .00 | .00 |
| 8126 | Dec 28, 2015 | | 3,474.00 | .00 | 3,474.00 | .00 | 3,474.00 | .00 | .00 | .00 | .00 |
| 8105 | Dec 26, 2015 | | 3,797.50 | .00 | 3,797.50 | .00 | 3,797.50 | .00 | .00 | .00 | .00 |
| 8109 | Dec 26, 2015 | | 2,694.00 | .00 | 2,694.00 | .00 | 2,694.00 | .00 | .00 | .00 | .00 |
| 7966 | Dec 24, 2015 | 8068565 | 1,898.75 | .00 | 1,898.75 | .00 | .00 | 1,898.75 | .00 | .00 | .00 |
| 7967 | Dec 24, 2015 | 8068567 | 3,038.00 | .00 | 3,038.00 | .00 | .00 | 3,038.00 | .00 | .00 | .00 |
| 7972 | Dec 24, 2015 | | 7,321.50 | .00 | 7,321.50 | .00 | .00 | 7,321.50 | .00 | .00 | .00 |
| 7978 | Dec 24, 2015 | | 5,241.00 | .00 | 5,241.00 | .00 | .00 | 5,241.00 | .00 | .00 | .00 |
| 7979 | Dec 24, 2015 | | 1,881.00 | .00 | 1,881.00 | .00 | .00 | 1,881.00 | .00 | .00 | .00 |
| 7983 | Dec 24, 2015 | | 4,104.00 | .00 | 4,104.00 | .00 | .00 | 4,104.00 | .00 | .00 | .00 |
| 7984 | Dec 24, 2015 | | 1,670.10 | .00 | 1,670.10 | .00 | .00 | 1,670.10 | .00 | .00 | .00 |
| 7985 | Dec 24, 2015 | | 4,788.00 | .00 | 4,788.00 | .00 | .00 | 4,788.00 | .00 | .00 | .00 |
| 7986 | Dec 24, 2015 | | 6,228.00 | .00 | 6,228.00 | .00 | .00 | 6,228.00 | .00 | .00 | .00 |
| 7993 | Dec 24, 2015 | | 5,710.00 | .00 | 5,710.00 | .00 | .00 | 5,710.00 | .00 | .00 | .00 |
| 7932 | Dec 21, 2015 | 8068256 | 3,038.00 | .00 | 3,038.00 | .00 | .00 | 3,038.00 | .00 | .00 | .00 |
| 7951 | Dec 21, 2015 | | 5,544.30 | .00 | 5,544.30 | .00 | .00 | 5,544.30 | .00 | .00 | .00 |
| 7952 | Dec 21, 2015 | | 4,732.00 | .00 | 4,732.00 | .00 | .00 | 4,732.00 | .00 | .00 | .00 |
| 7953 | Dec 21, 2015 | | 2,898.00 | .00 | 2,898.00 | .00 | .00 | 2,898.00 | .00 | .00 | .00 |
| 7961 | Dec 21, 2015 | | 6,369.00 | .00 | 6,369.00 | .00 | .00 | 6,369.00 | .00 | .00 | .00 |
| 7857 | Dec 18, 2015 | | 2,493.00 | .00 | 2,493.00 | .00 | .00 | 2,493.00 | .00 | .00 | .00 |
| 7861 | Dec 18, 2015 | | 3,038.00 | .00 | 3,038.00 | .00 | .00 | 3,038.00 | .00 | .00 | .00 |
| 7890 | Dec 18, 2015 | 8068011 | 1,494.50 | .00 | 1,494.50 | .00 | .00 | 1,494.50 | .00 | .00 | .00 |
| 7901 | Dec 18, 2015 | | 4,194.00 | .00 | 4,194.00 | .00 | .00 | 4,194.00 | .00 | .00 | .00 |
| 7912 | Dec 18, 2015 | | 6,736.08 | .00 | 6,736.08 | .00 | .00 | 6,736.08 | .00 | .00 | .00 |
| 7915 | Dec 18, 2015 | | 5,292.00 | .00 | 5,292.00 | .00 | .00 | 5,292.00 | .00 | .00 | .00 |
| 7926 | Dec 18, 2015 | | 3,519.00 | .00 | 3,519.00 | .00 | .00 | 3,519.00 | .00 | .00 | .00 |
| Total: | | | 486,095.83 | .00 | 486,095.83 | 27,605.00 | 367,262.60 | 91,228.23 | .00 | .00 | .00 |
| Grand Total: | | | 486,095.83 | .00 | 486,095.83 | 27,605.00 | 367,262.60 | 91,228.23 | .00 | .00 | .00 |

Feb 24, 2016 16:51:23

*16-CV-200*

# EQUIPMENT LEASE AGREEMENT

This AGREEMENT is hereby entered into on this 12TH day of September, 2014, by and between **SAN MIGUEL PRODUCE, INC., a California corporation** ("LESSOR"), with its principal address at 4444 Navalair, Oxnard, California 93033 and **ROBO PRODUCE LLC, a Georgia Limited Liability Company** ("LESSEE"), with its principal address at 1188 Lawson Road, Lyons, Georgia 30436.

### W I T N E S S E T H :

WHEREAS, Lessor is the owner of certain tangible personal property further described below and is desirous of leasing same to Lessee under the terms and conditions contained herein; and

WHEREAS, Lessee is desirous of leasing the certain tangible personal property further described below from Lessor under the terms and conditions contained herein;

WHEREFORE, for good consideration and mutual promises, the Parties, intending to be legally bound hereby, agree and contract as follows:

1.  EQUIPMENT LEASE

    1.1   Lessor does hereby agree to lease to the Lessee, and the Lessee does hereby agree to lease from Lessor the processing Equipment described on Exhibit "A" attached hereto.

    1.2   Equipment to be leased under Paragraph 1.1 is currently located at Heinzen Manufacturing International, 405 Maycock Road, Gilroy, California 95020.

    Unless another location is designated by Lessor in writing, the foregoing location shall be the Lessor's designated location for purposes of Section 1.3 and below.

    1.3   Lessor shall be responsible for arranging the transportation of the Equipment from its current location to the processing facility upon commencement of the Lease Term, and shall be responsible for the return of the Equipment at the end of the Lease Term.

    1.4   At all reasonable times, the Lessee shall permit any persons designated by Lessor to visit the processing facility for the purpose of inspection and observation of the Equipment.

2.  LEASE TERM

    2.1   The initial term of this Agreement shall be for five (5) years commencing on the date the Equipment is installed and operational or November 1, 2014, whichever is later. During the initial term, Lessee shall have the right to elect in writing to continue to lease the Equipment for an additional five (5) year period.  The five year option is contingent on the five year extension of the Co-Packing Agreement between San Miguel Produce, Inc. and ROBO PRODUCE LLC and five year extension of the Building Lease between Herndon Family Properties, LLC and ROBO PRODUCE LLC.

_____  Initialed by Le[ssor]          _____  Initialed by Lessee

**EXHIBIT**

**C**

FILED BY TOOMBS COUNTY CLERK OF COURTS 2016 APR -5  PM 3: 27

2.2   Unless earlier suspended or terminated by Lessee or extended by written agreement between Lessor and Lessee, the term shall continue for the period specified in Section 2.1.

3.   RESPONSIBILITIES OF THE LESSEE

3.1   During the term of the Agreement or any extension hereof, Lessee shall be responsible for and pay the cost of all necessary repairs, maintenance and replacement of parts to the Equipment occurring during the Lease Term. Lessee shall, at its sole cost and expense, keep the Equipment in good repair and condition.

3.2   Lessee shall allow only qualified and duly trained operators to use, operate, maintain, and repair the Equipment. Lessee shall at all times use the Equipment in a careful and prudent manner. Lessee and its operators' use and maintenance of the Equipment shall follow the GMP standards and policies and shall follow GMP food safety standards and policies.

3.3   At such time as the Equipment is installed and operational, Lessee shall assume and the entire risk of loss and damage to the Equipment from any and every cause whatsoever. No loss or damage to the Equipment or any part thereof shall impair any obligation of Lessee under this Agreement which shall continue in full force and effect through the term of the Lease. In the event of loss or damage of any kind whatsoever to the Equipment, Lessee shall:

i.   Place the same in good repair, condition and working order, or

ii.   Replace the same with like equipment in good repair, condition and working order, or

iii.   Pay to Lessor the fair market value of the Equipment.

3.4   Lessee shall return the Equipment to Lessor in the same condition as received from Lessor allowing for reasonable wear and tear.

3.5   Lessee shall not make any modifications to the Equipment without the express written consent of Lessor. A condition of any such modifications shall be that all cost of re-modifying the Equipment to its original intended use by the Lessor is to be borne by the Lessee.

3.6   Lessee agrees to comply with all state and federal laws relating to the operation of the Equipment.

4.   PAYMENT TERMS

4.1   On the first day of each month during the term of this lease, beginning December 15, 2014, Lessee shall pay to Lessor a monthly rental in the amount of $16,575.00.

4.2   All payments shall be made by Lessee to the order of San Miguel Produce, Inc., 4444 Navalair, Oxnard, CA 93033.

_____ Initialed by Lessor          2          _____ Initialed by Lessee

4.3 Any payment not received by Lessor within ten (10) days of the due date shall be considered overdue. In the event that any payment is not received when due, interest shall accrue on the amount overdue at the lesser of ten percent (10%) per annum, or the highest interest rate chargeable under the laws of the State of California for such transactions.

5. MOBILIZATION

   5.1 Lessor shall be responsible for transporting the Equipment to and from the Lessor's designated location, including all expenses and freight charges.

   5.2 Mobilization shall include transport and unloading of Equipment.

6. TAXES

   6.1 Payment of any tax, fee or other charge levied by a governmental authority related to or arising out of this Agreement shall be the responsibility of Lessee, except Lessor's income or capital gains taxes as a result of this Agreement.

   6.2 The fees and lease rents provided for in this Agreement are exclusive of state sales taxes, use taxes, gross receipt taxes, or other similar taxes, payment of which shall be the sole responsibility of Lessee.

7. OWNERSHIP OF EQUIPMENT

   7.1 The Equipment is, and shall at all times be and remain, the sole and exclusive property of Lessor; and the Lessee shall have no right, title or interest therein or thereto except as expressly set forth in this Agreement.

   7.2 In the event of a default on the part of Lessee in the payment of any monies due and owing to Lessor, Lessor shall have, and Lessee hereby does grant Lessor, the right to enter onto any land upon which the Equipment is being housed, and to remove the Equipment without first resorting to the process of law. Upon Lessor's removal of the Equipment, the lease shall terminate. This grant of authority shall be irrevocable by Lessee until the Equipment is returned to Lessor and without notice or demand to Lessee. Lessor may sue for and recover all rents and other payments, damages and expenses, including reasonable attorney's fees with respect to the Equipment.

8. ASSIGNMENT

   8.1 Lessee shall not assign its interest in this Agreement or in the Equipment without the prior written consent of Lessor. Lessee is to retain possession of the Equipment at all times during the term of this Agreement except upon demand of surrender by Lessor or repossession by Lessor. Lessor shall have the unilateral right to assign its interest in this Agreement to a third party.

_____ Initialed by Lessor      3      _____ Initialed by Lessee

9.   INSURANCE AND LIABILITY

9.1   Lessee assumes all risks, and will pay all costs and expenses of any character, arising from the use, possession, or maintenance of the Equipment, and agrees to indemnify and hold harmless Lessor from and against all loss or damage or claims for loss or damage (including attorney's fees) for injury to, or death of persons or property, including loss of use, caused by said Equipment, or arising out of the use, possession or maintenance of the Equipment, and to give Lessor immediate written notice of any such loss or damage, or loss of possession of the Equipment occasioned by any cause whatsoever. Lessor is not responsible for work days lost due to mechanical problems encountered with the Equipment.

9.2   Lessee shall, at its own expense, maintain insurance coverage as follows:

    i.   Worker's compensation insurance and such other employee insurance as shall be required by applicable state and federal laws for each of Lessee's employees associated with the Equipment or the use thereof.

    ii.   Comprehensive general liability insurance coverage in an amount not less than $2,000,000 combined single occurrence limits for bodily injury and/or property damage. Lessor shall be given proof of said policy.

    iii.   Property damage and loss insurance for the Equipment for the complete replacement value of the Equipment.

    iv.   Lessee shall provide Lessor with proof of such insurance prior to mobilization of the Equipment.

10. REPRESENTATIONS AND WARRANTIES

10.1   Lessor warrants that the Equipment will be in good working condition at the time installation of the Equipment in Lessee's facility is completed.

10.2   Lessor disclaims any and all warranties, express or implied, including but not limited to implied warranties of merchantability and fitness for a particular purpose.

10.3   If any warranty exists from the manufacturer of the Equipment, Lessor passes along its rights under unexpired manufacturer's warranty to Lessee.

11. INDEMNIFICATION

11.1   Lessee shall indemnify and hold harmless Lessor, its directors, officers, employees, and agents against all claims, liabilities, losses, damages and expenses, of every character and kind whatsoever, for property damage, bodily injury, sickness or disease resulting from either the negligence or willful misconduct of Lessee.

11.2   Lessor shall indemnify and hold harmless Lessee, its officers, employees and agents against all claims, liabilities, losses, damages and expenses, of every character and kind whatsoever,

4

_____ Initialed by Lessor          _____ Initialed by Lessee

for property damage, bodily injury, sickness or disease, if such claim, liability, loss, damage or expense arises out of the services to be performed under this Agreement by Lessor or is due to the negligence or willful misconduct of Lessor.

11.3   Anything above to the contrary notwithstanding, in the event that it is determined that a claim, liability, loss, damage or expense for property damage, bodily injury, sickness or disease is the proximate result of the negligence or willful misconduct of both parties, then each party shall indemnify and hold harmless the other party from and against such claim, liability, loss, damage or expense to the degree and proportion that the harm or damage was caused by the indemnifying party as compared to the degree or proportion of fault of the other party.

## 12. GOVERNING TERMS

12.1   No other terms or conditions or modification of these terms shall be binding upon Lessor unless specifically accepted in writing by the undersigned representative of Lessor. Merely signing a purchase order or other document as a condition of payment shall not be deemed a specific acceptance of terms therein by Lessor.

## 13. SEVERABILITY

13.1   In the event any provision of this Agreement is deemed to be void, invalid, or unenforceable, that provision shall be severed from the remainder of this Agreement. All remaining provisions of this Agreement shall then continue in full force and effect. If any provision shall be deemed invalid due to its scope or breadth, such provision shall be deemed valid to the extent of the scope and breadth permitted by law.

## 14. ENTIRE AGREEMENT

14.1   This Agreement constitutes the entire Agreement between the parties with respect to its subject matter, supersedes any previous agreements and understandings and can be any number of counterparts and all of such counterparts taken together shall be deemed to constitute one and the same instrument. Delivery of an executed counterpart of a signature page of this Agreement by facsimile shall be effective as delivery of a manually executed counterpart of this Agreement.

## 15. GOVERNING LAW AND JURISDICTION

15.1   This Agreement, and any dispute arising from the relationship between the parties to this Agreement, shall be governed by, construed and determined in accordance with the Laws of the State of Georgia, without regard to its conflict of laws rules. Any dispute that arises under or relates to this Agreement (whether contract, tort, or both) shall be resolved in the Superior Court of Toombs County, Georgia, and the parties expressly waive any right they may otherwise have to cause any such action or proceeding to be brought or tried elsewhere, waive all defenses of lack of personal jurisdiction and forum non conveniens.

_____ Initialed by Lessor                5        _____ Initialed by Lessee

Signatures on following page

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the day and year first above written.

LESSOR:

SAN MIGUEL PRODUCE, INC.

By_____

Roy Nishimori, President

LESSSEE:

ROBO PRODUCE LLC, By Its Managers

L. G. HERNDON, JR. FARMS, INC.

By:_____ (Bo) Pres.

L. G. (Bo) Herndon, Jr., President

SAN MIGUEL PRODUCE, INC.

By: _____

Roy Nishimori, President

_____ Initialed by Lessor          6          _____ Initialed by Lessee

16-CV-200

# EXHIBIT A

# LIST OF EQUIPMENT

FILED BY TOOMBS COUNTY
CLERK OF COURTS
2016 APR -5 PM 3:27

PROFORMA



**West Coast Plastics Equipment, Inc.**

Remit To:

6122 W. Washington Blvd.
Culver City, CA, 90232

Ph: (323) 870-7733
Fax: (310) 837-4947
sales@westcoastplastics.com

# INVOICE
PROFORMA

| Bill To: | Ship To: |
|---|---|
| San Miguel Produce<br>4444 Navalair Road<br>Oxnard, CA 93033 | San Miguel Produce<br>5558 Highway 1<br>South Lyons, GA 30436 |

| PO Number | SHIP VIA | SHIP DATE | TERMS | DATE |
|---|---|---|---|---|
| Verbal-Terry | Truck | | 1/3, 1/3, 1/3 | 9/2/2014 |

| QTY | PART NUMBER | DESCRIPTION | PRICE | UNIT | EXTENDED | TAX |
|---|---|---|---|---|---|---|
| 2 | MPS6100 | Emplex Band Sealer with optional 3/4"<br>seal and casters | $7,410.00 | ea | $14,820.00 | |

| Comments: | | |
|---|---|---|
| Lead time 3-4 weeks ARO and deposit payment. | Subtotal: | $14,820.00 |
| | Freight: | $600.00 |
| | Sales Tax: | $0.00 |
| | Total: | $15,420.00 |
| | Applied To Date: | $0.00 |
| | **Balance Due:** | **$15,420.00** |

2016 APR -5 PM 3:27   FILED BY TOOMBS COUNTY CLERK OF COURTS



**PULSE INSTRUMENTS®**
943 Flynn Road
Camarillo, CA 93012
Phone: (800) 462-1926
Fax:    (800) 878-9172
support@pulseinstrument.com

# Pro Forma Invoice

| Date | P.F. No. |
|---|---|
| 9/2/2014 | 41843 |

| Name / Address | Ship To |
|---|---|
| San Miguel Produce, Inc.<br>Accounts Payable<br>4444 Navalair Road<br>Oxnard, CA  93033 | San Miguel Produce<br>Terry Lund<br>5558 Highway 1<br>South Lyons, Georgia 30436 |

| P.O. No. | Terms | Rep | Ship Via | FOB | Project | Order By |
|---|---|---|---|---|---|---|
| | See Below | IH | UPS | Ship Point | - Georgia | Terry |

| Ordered | Item | Description | Rate | Amount |
|---|---|---|---|---|
| | | TERMS: 50% Down,25% Upon Delivery, Balance Net 30 Days | | |
| 1 | EP500 | Water Disinfection System Powered by ePulse Includes Mounted in additional Waterproof Enclosure for Hose down Environment Includes WirelessNetwork cards Includes Additional sensor input cards Prepared for Fresh Produce industry, to be compliant with new FISMA rules | 7,900.00 | 7,900.00T |
| 1 | SS500T-01 | Stainless Stand for control system mounting | 1,700.00 | 1,700.00T |
| 1 | PICL802 | Free Chlorine Disinfection Sensor, 0-200ppm, 4-20 mA, 20ft Cable, No Flow Cell | 1,800.00 | 1,800.00T |
| 2 | PI0030-ORP | ORP sensor, flat style | 310.00 | 620.00T |
| 2 | PI0030-pH | pH sensor, flat style | 310.00 | 620.00T |
| 4 | PI0130-pH | pH/ORP Electrode Housing with Preamplifier and Pt 1000 ATC, 20ft Cable | 405.00 | 1,620.00T |
| 2 | MF-FC06-12-FST700 | Large Flow Cell Manifold for ppm Sensor With Sample Port, 2 PI0030 Sensor Input, Thermal Flow Switch and Compression Fitting for Sensor. Mounted on Polyboard | 1,200.00 | 2,400.00T |
| 1 | MB375-02 | Mounting Board Polypropyiene .375" X 29.50" X 40.5". | 267.10 | 267.10T |
| 4 | EHE46E1-VC | Iwaki WCM Chemical Metering Pump; 12.0 GPH; 60 psi; 1/2" tubing. PVC Head, FKM Valve Seat and Seals. 2 year warranty | 1,450.00 | 5,800.00T |

| | |
|---|---|
| | Subtotal |
| | Sales Tax  (0.0%) |
| | **Total** |

| Customer Phone | Customer Fax |
|---|---|
| (805) 488-0981 | (805) 488-2103 |

 **P**ULSE  **I**NSTRUMENTS®
943 Flynn Road
Camarillo, CA 93012
Phone: (800) 462-1926
Fax:    (800) 878-9172
support@pulseinstrument.com

# Pro Forma Invoice

| Date | P.F. No. |
|------|----------|
| 9/2/2014 | 41843 |

| Name / Address | Ship To |
|---|---|
| San Miguel Produce, Inc.<br>Accounts Payable<br>4444 Navalair Road<br>Oxnard, CA  93033 | San Miguel Produce<br>Terry Lund<br>5558 Highway 1<br>South Lyons, Georgia 30436 |

| P.O. No. | Terms | Rep | Ship Via | FOB | Project | Order By |
|----------|-------|-----|----------|-----|---------|----------|
|  | See Below | IH | UPS | Ship Point | - Georgia | Terry |

| Ordered | Item | Description | Rate | Amount |
|---------|------|-------------|------|--------|
| 1 | Installation | Installation and Start-Up Assistance with Training<br>Freight Prepaid And Add<br>terry.lund@cutnclean.com | 2,500.00 | 2,500.00 |

| | | |
|---|---|---|
| | Subtotal | $25,227.10 |
| | Sales Tax  (0.0%) | $0.00 |
| | **Total** | $25,227.10 |

| Customer Phone | Customer Fax |
|---|---|
| (805) 488-0981 | (805) 488-2103 |



# Proforma Invoice

(770) 704-2000 Phone
(770) 479-2918 Fax
2563 Airport Industrial Drive
Ball Ground, GA 30107

| Date | Order # |
|------|---------|
| 9/4/2014 | SO6464 |

**Bill To**

San Miguel Produce
Terry Lund
4444 Naval Air Rd.
Oxnard, CA 93033

**Ship To**

San Miguel Produce
5558 Hwy 1
South Lyons, GA 30436

| All sales are subject to payment, equipment is not reserved until payment is received | P.O. No. | Terms | Rep | WO/Job | Type of Sale | FOB Shipping Point |
|---|---|---|---|---|---|---|
| | Verbal | Due Before Ship | TD | WO9829 | As Is - Where Is | Ball Grnd, GA |

| Description | Qty | Rate | Item Sold | Amount |
|---|---|---|---|---|
| (9032) Used 5,000 Gallon Vertical Refrigerated Storage Tank, Model 5000, s/n 80-B026457 | 1 | 15,750.00 | As Is - Where Is | 15,750.00 |
| Freight to South Lyons, GA 30436 | 1 | 1,380.00 | As Is - Where Is | 1,380.00 |

The Terms and Conditions of this invoice are set forth on the following page, incorporated herein. "The Terms and Conditions of this invoice are set forth on the following page, incorporated herein."

USD WIRE TRANSFERS -
SMB Machinery Systems, LLC -
c/o US Bank
ABA # 091000022
Acct# 104790846281
Swift Code - USBKUS44IMT
Bank Address: 800 Nicollet Mall, Minneapolis, MN 55401-7020

| Total ORDER | $17,130.00 |
|---|---|



ORDER CONFIRMATION
No. 10500256          Page 1 of 3

**Information**

| | |
|---|---|
| Date | 08/29/2014 |
| Your order No.: | 43002 |
| Your order of | 08/29/2014 |
| Customer no. | 1085874 |

San Miguel Produce, Inc.
4444 Navalair Rd
Oxnard CA  93033

| | |
|---|---|
| Contact person | Mary Martin |
| Phone | (714)893-0730 |
| Fax | 714-893-0731 |
| Email | mary.martin@kaeser.com |

**Shipping address**
San Miguel Produce, Inc.
5558 Hwy 1
South Lyons GA  30436

**Shipping details / Services**

| | |
|---|---|
| Delivery: | EXW |
| (Incoterms©2010) | Shipping point |
| By: | VA-Z11 Truck |
| Carrier: | Southeastern Freight Line |

**Additional Information**

Ship via: Southeastern Freight, prepaid and add

KCI LA

| Item | Description | Material | QTY | UM | Unit price USD | Discount % | Total USD |
|---|---|---|---|---|---|---|---|
| 10 | **AS 25 T 125 psi SCB TriVolt. US** | 101930.0 | 1.000 | PC | 13,872.53 | | 13,872.53 |

1 Service manual(s) included with each, English

| | |
|---|---|
| Model | AS 25 T |
| Electrical connection | 208/230/460V / 3 / 60Hz |
| Max. work.press. (g) [psi] | 125.0 psi |
| Control version | Sigma Control Basic |

Wired 460V

**Projected delivery date:**     09/05/2014

Invoiced goods remain the property of Kaeser Compressors, Inc. until payment is received. No returns without authorization. Approved returns must be shipped pre-paid and are subject to restocking charges up to 25%. Past due accounts subject to 1 1/2% interest monthly.

Kaeser Compressors, Inc., P.O.Box 946, Fredericksburg, VA 22404, Phone: (540)-898-5500 Fax: (540)-898-5520 www.kaeser.com
A Company with Certified Quality and Environmental Management Systems ISO 9001-2008 and 14001-2004



ORDER CONFIRMATION
No. 10500256          Page 2 of 3

| Item | Description | Material | QTY | UM | Unit price USD | Discount % | Total USD |
|------|-------------|----------|-----|-----|----------------|------------|-----------|
| 20 | 400 gallon Vertical Tank 150 PSI | ANTANK400150 | 1.000 | PC | 2,136.67 | | 2,136.67 |
| | Projected delivery date: | 09/05/2014 | | | | | |
| 30 | 4" Pressure Gauge (0-300 psi) Liquid | AN51850 | 1.000 | PC | 117.29 | | 117.29 |
| | MSDS ENCLOSED WITH SHIPMENT | | | | | | |
| | Projected delivery date: | 09/05/2014 | | | | | |
| 40 | Safety valve 1/2NPT 140psi | AN820561 | 1.000 | PC | 40.15 | | 40.15 |
| | Projected delivery date: | 09/18/2014 | | | | | |
| 50 | Kaeser Eco-Drain 30, 115V | ANECODRAIN30 | 1.000 | PC | 232.00 | | 232.00 |
| | Projected delivery date: | 09/05/2014 | | | | | |
| 60 | Oil Removal KOR-170 | USKOR170BF | 1.000 | PC | 655.00 | | 655.00 |
| | Projected delivery date: | 09/05/2014 | | | | | |
| 70 | KCF-50 Condensate Treatment System | ANKCF50 | 1.000 | PC | 735.00 | | 735.00 |
| | Projected delivery date: | 09/05/2014 | | | | | |
| 80 | Annual Maint. Kit – ASK.3 S460 | ANAKASK3S | 1.000 | SE | 948.39 | | 948.39 |
| | Items from 90 to 140 are included in the price | | | | | | |
| | Projected delivery date: | 09/05/2014 | | | | | |
| 90 | Air filter cartridge Ø120x135 | 6.4163.0 | 1.000 | PC | | | |
| | Projected delivery date: | 09/05/2014 | | | | | |

Invoiced goods remain the property of Kaeser Compressors, Inc. until payment is received. No returns without authorization. Approved returns must be shipped pre-paid and are subject to restocking charges up to 25%. Past due accounts subject to 1 1/2% interest monthly.

Kaeser Compressors, Inc., P.O.Box 946, Fredericksburg, VA 22404, Phone: (540)-898-5500 Fax: (540)-898-5520 www.kaeser.com
A Company with Certified Quality and Environmental Management Systems ISO 9001-2008 and 14001-2004



**ORDER CONFIRMATION**
No. 10500256          Page 3 of 3

| Item | Description | Material | QTY | UM | Unit price USD | Discount % | Total USD |
|------|-------------|----------|-----|-----|---------------|-----------|-----------|
| 100 | Filter mat 530x490x20 | 5.6143.0 | 5.000 | PC | | | |
| | Projected delivery date: | 09/05/2014 | | | | | |
| 110 | Filter mat 112x112 | 6.3572.0 | 5.000 | PC | | | |
| | Projected delivery date: | 09/05/2014 | | | | | |
| 120 | Oil filter | 6.3463.0 | 1.000 | PC | | | |
| | Projected delivery date: | 09/05/2014 | | | | | |
| 130 | Oil Separator cartridge cpl. | 6.3789.0 | 1.000 | PC | | | |
| | Projected delivery date: | 09/05/2014 | | | | | |
| 140 | S-460 Synthetic Oil $/(5 gal)  ANS460-5  MSDS ENCLOSED WITH SHIPMENT | | 1.000 | PC | | | |
| | Projected delivery date: | 09/05/2014 | | | | | |

**TOTAL PRICE IN USD**                                                 **18,737.03**

**Terms of payment**
**Within 30 days**

**Terms and conditions**
This Order confirmation is effective and expressly conditional on Buyer's assent to all terms and conditions incorporated in this Order confirmation that are additional to or different from those stated in Buyer's purchase order or other documents. Buyer's assent to this provision will be manifested by ordering, paying for, or receiving any portion of the goods designated herein. Seller's terms and conditions are available on request, and at www.kaeser.com/terms.

**Please Note:** Sales tax may apply if the delivery location is in one of the following states in which we have a presence: AL, AR, CA, CO, CT, FL, GA, IL, IN, KS, KY, ME, MD, MA, MI, MS, MO, NV, NJ, NC, OH, OK, PA, RI, TN, TX, VA, DC, WV, NY, NM, WY, SC

Thank you for your order. Please view our video regarding receiving shipments: www.kaeser.com/freight-tips.

Invoiced goods remain the property of Kaeser Compressors, Inc. until payment is received. No returns without authorization. Approved returns must be shipped pre-paid and are subject to restocking charges up to 25%. Past due accounts subject to 1 1/2% interest monthly.
Kaeser Compressors, Inc., P.O.Box 946, Fredericksburg, VA 22404, Phone: (540)-898-5500 Fax: (540)-898-5520 www.kaeser.com
A Company with Certified Quality and Environmental Management Systems ISO 9001-2008 and 14001-2004



16-CV-200



**HEINZEN MANUFACTURING INTL.**
405 Mayock Rd. Gilroy,. CA 95020
408-842-7233, fax 408-842-6678

## --QUOTATION--

| Quote Number: | 30485  Rev #:  13 | Rev. Date: | 3/10/2014 |
|---|---|---|---|
| | | On Site Date: | 9/15/2014 |

| BILL TO: | San Miguel Produce | SHIP TO: | San Miguel Produce |
|---|---|---|---|
| | 4444 Navalair Road | | 4444 Navalair Road |
| | Oxnard, CA 93033 | | Oxnard, CA 93033 |

*Sales Person:* Roby, Bill          *Project Description:* Green's Line
*Customer Code:* SMP
*Contact:* Terry Lund

| Item | Reference | Description | Quantity | Unit Price | Optional | Price |
|---|---|---|---|---|---|---|
| .1 | D30485R05 | **GREEN'S LINE** | 1 | | | |

- All material shall be non corrosive or 304 stainless steel unless otherwise noted
- All welds shall be Gas Metal Arc Welds (MIG welds) unless otherwise noted
- All welded areas shall be blasted with stainless steel shot

- QUOTED WITH 230/460V, 60 Hz, 3 Ph, MOTORS AND 230V MCC

REF. DWG. #D30485R05

| | | | | | | |
|---|---|---|---|---|---|---|
| .2 | | **PROCESS DESCRIPTION** | 1 | | | |

- Product - Chopped Collard Greens, Chopped Mustard
  Greens, Chopped Kale, Chopped Spinach, Chopped
  Green Swiss Shard
- Product Rate - 3000 pounds per hour
- Packagaing - 1lb bag, 12" x 12"

| | | | | | | |
|---|---|---|---|---|---|---|
| .3 | | **PROCESS FLOW DESCRIPTION >** | 1 | | | |

RPC are pulled form a pallet and then hand dumped onto the inspection conveyor.
Inspected product will then continue on and discharged into Pre-wash tank under a dunker
conveyor and up the dewatering conveyor.
Waste or Cull material is place in a chute, cull are transferred from cull conveyor to incline
conveyor to feed a bin.
The product discharges the per wash tank dewatering conveyor into the TRS Urschel
cutter.
The product discharges the TRS onto an incline conveyor.
The product discharges the incline conveyor into First wash system then under the hold
down conveyor and the up the dewatering conveyor.
The product discharge the first washes dewatering conveyor into the second wash flume
The product passes through the flume into the Hr-Zone and the discharges onto the
dewatering shaker.
The product will separate from the water and discharge into a slide gate chute.
The water will pass through the screens into the filter screen up well and then into the
pump tank.

| | | | | | | |
|---|---|---|---|---|---|---|
| .4 | | | | | | |

A person will manually place a SD-50 basket under the slide gate chute and open the gate
and fill the basket once it is to the proper level the gate is closed and a new basket in
places under the gate.
The full basket of wet product is rolled to one of 3 empty Spin Dryers and placed inside,
closed the lid and let the cycle start.
After the cycle is completed a person will remove the basket from the Spin Dryer and
hand dump the product into the incline feed conveyor.
The Product will discharge the incline feed conveyor onto the Packing Conveyor.
The product will be manually place into the Prepack machines, the filled bags are

| Quote No: | 30485 | Rev #: 13 | Project Description: Green's Line |
|---|---|---|---|
| Customer: | San Miguel Produce | | |
| Contact: | Terry Lund | | |

| Item | Reference | Description | Quantity | Unit Price | Optional | Price |
|---|---|---|---|---|---|---|
| | | manually places onto the open bag conveyors, The open bags will be manually set into the bag sealer then onto the sealed bag transfer conveyor. The bagged product will transfer onto the metal detector conveyor and pass through the detector head and discharges onto a pack off table. | | | | |
| .5 | | **PROJECT UTILITY REQUIREMENTS** | 1 | | | |
| | | Power (plant, site supplied) • 460V, 60Hz, 3Ph, unless otherwise specified in the project/WO, description/comment section of the quote. | | | | |
| | | Air, (plant supplied) • Min 90 PSI @ 5 CFM, unless otherwise specified in the project/WO, description/comment section of the quote. | | | | |
| | | Water (plant, site supplied) •To be specified in the project / WO description  comment section of the quote. | | | | |
| | | | *Item:* 0 | *Total:* | | $0.00 |
| 100 | | **RAW PRODUCT AREA** | 1 | | | |
| 101 | | **SYSTEM ENGINEERING** | 1 | $3,000.00 | | $3,000.00 |
| | | The system engineering will consist of the following: • Machine layout and interface. • Project management. • Equipment will be designed to fit the location as per layout on drawing #D30485R04 • All Dimensions shall be verified and made final prior to layout for installation. | | | | |
| 101.1 | | **SANITARY DESIGN EQUIPMENT CHECKLIST (FSMA)** | 1 | | | |
| | | One Time Introductory offer to San Miguel Produce, No Charge | | | | |
| | | HMI equipment designs are based on implementation of the 10 principles of sanitary design with the on going effort to provide high hygienic designs that are easy to clean. | | | | |
| | | • Design of Equipment to follow guidelines that will ensure manufacturing with sanitary design principles focusing on preventing food contamination. • Equipment designed and manufactured to maximize easy cleaning and minimize sources of contamination. • A copy of the Equipment Design Checklist for each piece of equipment shall be provided with its equipment manual | | | | |
| | | | *Item:* 101 | *Total:* | | $3,000.00 |
| 102 | 236720 | **CONVEYOR, 2 BELT INSPECTION, WITH CULL BELT 36"/30" X 16' FT LG** | 1 | $32,280.90 | | $32,280.90 |
| | | • All stainless steel LP-01 construction with hinges product guides • 16 ft of inspection area and a 20 degree incline section to feed per-washer • Gearbox and motor: SST shaft mount • Motor: SST 1 hp; 1750 RPM, 480V/3P • Bearing: SST P/B, 1-7/16 • Drive shaft, sprockets 6" dia. w, 1-7/16 bearing assembly • Tail sprocket, 36"w, 1-7/16 bearing assembly • Belt: 800 series Intralox plastic modular Belting • Discharge ears | | | | |

| Quote No: | 30485 | Rev #: 13 | Project Description: Green's Line |
|---|---|---|---|
| Customer: | San Miguel Produce | | |
| Contact: | Terry Lund | | |

| Item | Reference | Description | Quantity | Unit Price | Optional | Price |
|---|---|---|---|---|---|---|
| | | • (8) Cull Chutes (231547)<br>• CULL CONVEYOR, 30" wide FR-01 construction<br>• Gearbox and motor: SST shaft mount<br>• Motor: SST 1 hp; 1750 RPM, 480V/3P<br>• Bearing: SST P/B, 1-7/16<br>• Drive shaft, sprockets 6" dia. w, 1-7/16 bearing assembly<br>• Tail sprocket, 36"w, 1-7/16 bearing assembly<br>• Belt: Intralox plastic modular Belting<br>• Discharge ears, | | | | |
| 102.1 | 236745 | CONVEYOR , CULL TRANSFER, 18" WIDE BELT WITH A 45 DEGREE INCLINE TO FEED A BIN | 1 | $16,998.49 | | $16,998.49 |
| | | To Include:<br>• All stainless steel construction<br>• TH-01 frame design<br>• 18" wide 2-ply RMV belting with 2" tall cleats spaced 8" apart<br>• SST motor, 230/460V, 3 Ph motor bolted to a shaft mounted gearbox<br>• Discharge ears<br>• Adjustable foot pads | | | | |
| | | | Item: 102 | Total: | | $48,279.39 |
| 103 | 236650 | PRE WASH, 36" WIDE, WITH TANK DEWATERING CONVEYOR AND PUMP TANK WITH SCREEN | 1 | $41,329.31 | | $41,329.31 |
| | | To Includes;<br>WASH TANK<br>• Stainless steel tank, 36" wide x 9 ft<br>• SST plumbing manifold<br>• 6" wide return trough to parabolic filter screen<br>PUMP TANK<br>• Pump tank with parabolic filter screen & water level controls<br>• 10HP SST recirculation pump w/ SST wash down duty motor<br>• Conveyor dewatering<br>• Gearbox and motor: SST shaft mount<br>• Motor: SST 1 hp; 1750 RPM, 480V/3P for<br>• 25 -410 sprockets 1-1/2" square bore<br>• Belt: DURA-LOCK, S. 25-400, 24"w, Polyethylene<br>• Belt lifters<br>• Conveyor tail section pivots out of tank to allow for easy cleaning and maintenance<br>• Drop-down product guides | | | | |
| 104 | 235982C02 | WASH DUNKING BELT, 36" WIDE, PIVOTING SHAFT MOUNT GEARBOX/MOTOR | 1 | $8,302.40 | | $8,302.40 |
| | | Dunking belt assembly that pivots down into the wash tank dunking the product insuring product is wetted at start of wash cycle<br>• All Stainless Steel and Food Safe Plastic Construction<br>• Motorized rotation utilizing a shaft mount gearbox and 1 HP motor<br>• Belt manually pivots out of flow for cleaning<br>• All attachments to be installed on 36" Wide Standard HMI Flume<br>• BELTING; 36"W;FLAT WIRE;TRUE 1/2X1/2;SD BELT; WELDED; 3/8" X .046" RD EDGE STRIP; 11GA ROD SLOTTED HOLES; 33 PICKETS; 65% OPEN | | | | |
| 105 | 227724C19 | MCC, RAW PRODUCT & PRE-WASH | 1 | $15,080.98 | | $15,080.98 |
| | | Motor Control Center which includes:<br>• NEMA 4X SST enclosure<br>• 60 Amp main circuit breaker<br>• (3) 1HP VFD (Inspection belt, dunker belt, dewatering belt) each with Start/Stop<br>• (2) 1 HP starters (2 Cull belts) | | | | |

| Quote No: | 30485 | Rev #: 13 | Project Description: Green's Line |
|---|---|---|---|

Customer: San Miguel Produce
Contact: Terry Lund

| Item | Reference | Description | Quantity | Unit Price | Optional | Price |
|---|---|---|---|---|---|---|
| | | • (1) 10 HP starter with HOA (Pump Jets)<br>• 22mm NEMA 4X E-Stop, Pushbutton, Selector Switch, and Indicator Operators<br>• Pump Tank Level control<br>• UL508A listed<br>• Mount to Floor mounted stand | | | | |
| 106 | #C-2086DF | TRANSLICER, URSCHEL - BY CUSTOMER<br><br>By Customer | 1 | | | |
| 107 | M231705 | CART, SLICER, URSCHEL 'TRS 2510'<br>Stainless steel stands construction will include:<br>• Stainless steel tube frame and legs.<br>• (2) Swivel syncro-locking casters.<br>• (2) Rigid casters.<br>• Slicer mount brackets.<br>• Caster mount brackets. | 1 | $3,071.12 | | $3,071.12 |
| 109 | 236709 | CONVEYOR, INCLINE AT 17-DEG,<br>THERMODRIVE BELTING 36"W X 16 FT -<br>LG.<br>• Gearbox and motor: SST shaft mount<br>• Motor: SST 1 hp; 1750 RPM, 480V/3P<br>• Tail shaft, 1-7/16 bearing assembly<br>• ThermoDrive sprockets<br>• SS 6.38 VDL, 37.4 " Tail Pulley<br>• ThermoDrive sprockets<br>• ThermoDrive 8026 Flush Edge Flat Top Belt, Blue Polyurethane, with lacing<br>• TH-01 Tube frame design<br>• UHMW slider bed<br>• SS Tube Leg Frame Weldments, 3X3 Tube<br>• SS Threaded adjustable SS swivel casters<br>• (2) Linked release lever arms<br>• Turn buckle link actuating round bar linear slide<br>• UHMW linear bearing blocks<br>• Belt lifter, round bar style lifter | 1 | $14,887.17 | | $14,887.17 |
| 110 | | WASH SYSTEM | 1 | | | |
| 112.1 | 236654 | INTEGRATED WASH SYSTEM, 36"W x 13'L<br>TANK -1ST WASH,<br>• Stainless steel tank, 36" wide x 13' long w/low pressure jets to roll product during wash<br>• SST plumbing manifold<br>• Dewatering conveyor,36" wide, 174" long(Approx.), Dip down head section,<br>• 1 hp motor and shaft mount gearbox<br>• Belt,Plastic Modular Belting.<br>• Drop-down product guides<br>• Water curtain<br>• Pump tank with (2)parabolic filter screens & water level controls<br>• (2) 10HP SST recirculation pumps w/ SST wash down duty motor<br>• (1) 3HP Chiller recirculation pump | 1 | $60,629.26 | | $60,629.26 |
| 112.2 | 235982 | WASH DUNKING BELT, 36" WIDE,<br>PIVOTING<br>SHAFT MOUNT GEARBOX/MOTOR<br>Dunking belt assembly that pivots down into the wash tank dunking the product insuring<br>product is wetted at start of wash cycle | 1 | $8,302.40 | | $8,302.40 |

| | | | | | | |
|---|---|---|---|---|---|---|
| *Quote No:* | 30485 | **Rev #:** 13 | *Project Description:* | Green's Line | | |
| *Customer:* | San Miguel Produce | | | | | |
| *Contact:* | Terry Lund | | | | | |

| Item | Reference | Description | Quantity | Unit Price | Optional | Price |
|---|---|---|---|---|---|---|
| | | • All Stainless Steel and Food Safe Plastic Construction | | | | |
| | | • Motorized rotation utilizing a shaft mount gearbox and 1 HP motor | | | | |
| | | • Belt, S25-100 Natural Polyethylene | | | | |
| | | • Belt manually pivots out of flow for cleaning | | | | |
| | | • All attachments to be installed on 30" Wide Standard HMI Flume | | | | |
| 112.4 | 227724C19 | MCC, INTEGRATED WASH SYSTEM, 36", NO CHILLER, FOR (2) PUMPS | 1 | $10,586.30 | | $10,586.30 |
| | | Motor Control Center which includes: | | | | |
| | | • NEMA 4X SST enclosure | | | | |
| | | • 30 Amp main circuit breaker | | | | |
| | | • (2) 1HP VFD with Start/Stop and Speed Control Pot for dewatering conveyor & Dunking conv | | | | |
| | | • (2) 10 HP starter with HOA and running light for pump | | | | |
| | | • HOA and running light for makeup and expansion valves | | | | |
| | | • Low water level light | | | | |
| | | • PICO PLC | | | | |
| | | • UL508A listed | | | | |
| | | • Mounted to wash system, pre wired | | | | |
| | | | *Item:* | **112** | *Total:* | $79,517.96 |
| 113 | | CHILLER UNIT AND THE CONTROL FOR CHILLER by CUSTOMER | 1 | | | |
| 116 | | SECOND WASH SYSTEM | 1 | | | |
| 117 | D30485R04 | 20" FLUME WASH SYSTEM -2ND WASH, WITH SUPPORT LEG | 1 | $2,393.65 | | $2,393.65 |
| | | To Includes: | | | | |
| | | • UP Well Laminar | | | | |
| | | • Flanges (213739) | | | | |
| | | • 90 corners(213737 &213867) | | | | |
| | | • Hr-zone (213730) | | | | |
| | | • Straight sections (216048) | | | | |
| | | • Sand trap with 24" sight gauge (227938) | | | | |
| | | • Supports(232521) | | | | |
| | | • Plumb from upwell to dewatering conveyor water knife at head pulley | | | | |
| | | • UPDATED 7/22/2014 PER CHANGE ORDER# 2 | | | | |
| 117.1 | | CHNANG ORDER #2 - MODIFY ITEM #2 (WO# 34699) | 1 | $23,291.92 | | $23,291.92 |
| | | • The following items will be combined with Item 117 - WO # 34699 | | | | |
| | | • Change is adding cost for | | | | |
| | | • (1) Laminar Flow - $6643.02 | | | | |
| | | • (4) Flange Kits for 20" flume - $1191.54 | | | | |
| | | • (1) Hr-zone with headders and hose kits - $4832.72 | | | | |
| | | • 12 ft of sstraight Flume section - $3634.99 | | | | |
| | | • (1) Snad trap with Sight tube - $716.09 | | | | |
| | | • (6) Flume support Frames - $4926.97 | | | | |
| | | • (1) Discharge Wier to Shaker - $1346.59 | | | | |

| Quote No: | 30485 | Rev #: 13 | | Project Description: Green's Line | | | |
|-----------|-------|-----------|--|------------|--|--|--|
| Customer: | San Miguel Produce | | | | | | |
| Contact: | Terry Lund | | | | | | |
| Item | Reference | Description | | Quantity | Unit Price | Optional | Price |
| | | | Item: 117 | Total: | | | $25,685.57 |
| 118.1 | 229322C01 | **SHAKER,XB,RHB,SD,DEWATERING,36 X 60,ASSY, (229322C03)** | | 1 | $22,780.76 | | $22,780.76 |
| | | Dewatering Shaker Includes: | | | | | |
| | | • Single Screen Deck Design | | | | | |
| | | • Dual Rotary XB-Drives, .40HP, 460v, Italvibras, SST Paint | | | | | |
| | | • Composite Spring Shaker Arms | | | | | |
| | | • Frame Designed to mount onto either Pump Tank or Stand Alone Frame. | | | | | |
| | | • Rigidized SST Pan Construction | | | | | |
| | | • Removable Screens for Sanitary Cleaning, 3/32"dia. holes on 5/32" staggered centers | | | | | |
| | | • Included, SST Catch Pan W/twist lock tube extension | | | | | |
| | | • Bias Feed Discharge | | | | | |
| 118.2 | FSHKMVSS9- | **ADD COST OF STAINLESS DRIVE UPGRADE** **ADD TO STANDARD SHAKER AS AVAILABLE OPTION** **STANDARD IS PAINTED DRIVE AND PAINT HAS BEEN FLAKING OVER TIME** | | 1 | $2,092.76 | | $2,092.76 |
| 118.3 | 228642-A4 | **FRAME, SIEVE SCREEN ASSEMBLY, FOR 36" x 60" XB SHAKER/TANK, (.022" FIBERWIRE)** | | 1 | $7,254.95 | | $7,254.95 |
| | | Frame assembly fits over pump tank below de-watering shaker | | | | | |
| | | • Holds (2) Parabolic screens, pivot for cleaning, .022" opening, Fiber wire Screen, 18" Radius | | | | | |
| | | • Diffuser screen | | | | | |
| | | • End access for sanitation | | | | | |
| 118.4 | 236043 | **SHAKER FRAME & PUMP TANK FOR 36 X 60 DE-WATERING SHAKER (SHORT)(-00)** | | 1 | $12,013.90 | | $12,013.90 |
| | | To include: | | | | | |
| | | • Frame to hold 36" x 60" XB Dewatering Shaker | | | | | |
| | | • Stainless Steel construction | | | | | |
| | | • Tank size approx 40 W x 127 L x 27 H, 385 GAL | | | | | |
| | | • (3) Tri-Clover connections for pumps | | | | | |
| | | • (1) Drain (capped) w/shut off valve | | | | | |
| | | • Adjustable legs | | | | | |
| | | • Overflow wier | | | | | |
| | | • Level control for pumps | | | | | |
| 118.6 | 232644C01 | **WATER CURTAIN FOR 36" SHAKER** | | 1 | $2,357.78 | | $2,357.78 |
| | | To include: | | | | | |
| | | • Stainless Steel construction | | | | | |
| | | • Installed above shaker | | | | | |
| | | • Mounting brackets and clips | | | | | |
| | | • 2" Drain | | | | | |
| | | • Hinged top cover | | | | | |
| | | | Item: 118 | Total: | | | $46,500.15 |
| 119 | | **CHILLER UNIT AND THE CONTROL FOR CHILLER by CUSTOMER** | | 1 | | | |
| | | A pump suction is added to the Pump Tank on Item #118 to connect the customer supplied chiller pump. | | | | | |
| 120 | 227589,22911 | **SHAKER, SLIDE GATE WITH CHUTE - 36"** | | 1 | $6,183.99 | | $6,183.99 |

| | | | | | | |
|---|---|---|---|---|---|---|
| *Quote No:* | 30485   Rev #:  13 | | *Project Description:*  Green's Line | | | |
| *Customer:* | San Miguel Produce | | | | | |
| *Contact:* | Terry  Lund | | | | | |

| Item | Reference | Description | Quantity | Unit Price | Optional | Price |
|---|---|---|---|---|---|---|
| | | **SHAKER** | | | | |
| | | • Mounts to Shaker Frame | | | | |
| | | • Used to fill SD50-LT Dryer baskets | | | | |
| | | • Stainless Steel Construction | | | | |
| | | • Manually Activated Slide gate to stop flow of product while changing baskets | | | | |
| 121.1 | 225339 | **PUMP, 10 HP, 20" LAMINAR FLOW** | 1 | $8,535.41 | | $8,535.41 |
| | | The pump will include: | | | | |
| | | • C4410 pump. | | | | |
| | | • 4" x 4" Tri-Clamp connections. | | | | |
| | | • 7 1/2" impeller. | | | | |
| | | • Buna elastomers. | | | | |
| | | • 10 HP, 1725 RPM motor. | | | | |
| | | • 300-450 GPM. | | | | |
| | | • Mount base assembly. | | | | |
| 121.2 | 232028 | **PUMP ADAPTOR KIT, 4" x 4"** | 1 | $1,250.50 | | $1,250.50 |
| | | The pump adaptor kit will include: | | | | |
| | | • Stainless tubing and fittings from tank to intake of pump. | | | | |
| | | • Stainless tubing and fittings from pump dischange with 4" butterfly valve with HIM locking handle. | | | | |
| 121.3 | M235063 | **PRE-INSTALLED PLUMBING FOR LAMINAR PUMP** | 1 | $4,079.25 | | $4,079.25 |
| | | •Pre-Installed Pumbing for 20" Flume System | | | | |
| | | • Stainless steel tubing with tri-clamp fittings | | | | |
| 121.4 | 227491 | **PUMP, 7 1/2 HP, 16" & 20" HR ZONE** | 1 | $4,335.62 | | $4,335.62 |
| | | The pump will include: | | | | |
| | | • C316 pump. | | | | |
| | | • 2 1/2" x 1 1/2" Tri-Clamp connections. | | | | |
| | | • 5-3/4" impeller. | | | | |
| | | • Buna elastomers. | | | | |
| | | • 7 1/2 HP, 3600 RPM motor. | | | | |
| | | • 150-180 GPM. | | | | |
| | | • Mount base assembly. | | | | |
| 121.5 | 229723 | **PUMP ADAPTOR KITS, 2 1/2" x 1 1/2"** | 1 | $1,056.01 | | $1,056.01 |
| | | The direct coupled pump adaptor kit will include: | | | | |
| | | • Stainless tubing and fittings from pump tank to intake of pump. | | | | |
| | | • Stainless tubing and fittings from pump dischange with 2" butterfly valve with HIM locking handle. | | | | |
| 121.6 | M235086 | **PRE-INSTALLED PLUMBING FOR HR-ZONE PUMP** | 1 | $3,888.23 | | $3,888.23 |
| | | •Pre-Installed Pumbing for 20" Flume System | | | | |
| | | • Stainless steel tubing with tri-clamp fittings | | | | |
| 121.7 | 228873 | **PUMP, 3 HP,  RECIRCULATION** | 1 | $3,510.29 | | $3,510.29 |
| | | The pump will include: | | | | |
| | | • C328 SST pump | | | | |
| | | • 3" x 2" SST Tri-Clamp connections | | | | |
| | | • 5-3/4" impeller | | | | |
| | | • Buna elastomers | | | | |
| | | • 3 HP, 1750 RPM SST motor | | | | |
| | | • 150 GPM | | | | |
| | | • SST mount base assembly | | | | |

| Quote No: | 30485 | Rev #: 13 | | Project Description: Green's Line | | | |
|---|---|---|---|---|---|---|---|
| Customer: | San Miguel Produce | | | | | | |
| Contact: | Terry Lund | | | | | | |

| Item | Reference | Description | Quantity | Unit Price | Optional | | Price |
|---|---|---|---|---|---|---|---|
| 121.8 | 232948 | PUMP ADAPTOR KITS, 3" x 2" | 1 | $4,079.25 | | | $4,079.25 |
| | | • Pre-Installed Pumbing for Chiller recir pump | | | | | |
| | | • Stainless steel tubing with tri-clamp fittings | | | | | |
| | | | Item: 121 | Total: | | | $30,734.56 |
| 122 | 227724C16 | MCC, FOR 2ND WASH SYSTEM | 1 | $14,851.18 | | | $14,851.18 |
| | | This panel will control the 2ND FLUME WASH SYSTEM and will include: | | | | | |
| | | • NEMA 4X, SS Enclosure | | | | | |
| | | • 60 AMP Main Breaker | | | | | |
| | | • (1) 3 HP Starter (recir Pump chiller) | | | | | |
| | | • (1) 7.5 HP Starter (pump) | | | | | |
| | | • (1) 10 HP Starter (pump) | | | | | |
| | | • (1) 2 HP VFD with (2) overloads (shaker) | | | | | |
| | | • Start/Stop Push Button | | | | | |
| | | • H.O.A. Selector Switches | | | | | |
| | | • E-Stop | | | | | |
| | | • MICROLOGIX PLC will be provided to monitor the Float Switch; Controls Make-up | | | | | |
| | | Water Solenoid | | | | | |
| | | • Temperature Controller with an RTD input will be mounted on the door with an H.O.A. to | | | | | |
| | | Control the Expansion Valve | | | | | |
| | | • Stainless Steel Stand | | | | | |
| 123 | | WATER DISINFECTIONS SYSTEM by CUSTOMER | 2 | | | | |
| 124 | | DRYING SYSTEM | 1 | | | | |
| 124.1 | F228065 | DRYER, SPIN, 460 VAC, SD50-LT 4 SPEED MENU SWITCH | 3 | $15,000.00 | | | $45,000.00 |
| | | To include: | | | | | |
| | | • Automatic product balancing start-up sequence | | | | | |
| | | • Stainless steel construction | | | | | |
| | | • Electric drive | | | | | |
| | | • (1) 32 gallon U.S.D.A. food grade plastic basket (unless specified this basket will have a | | | | | |
| | | 1/2 diameter hole perforated pattern) | | | | | |
| | | • Manual, SD50-LT | | | | | |
| | | • Easy access lower bearing auto grease lubricator. | | | | | |
| | | • Easy opening lid with viewing window and OSHA | | | | | |
| | | compliant safety sensor | | | | | |
| | | • Stainless steel pinch point and drive guards | | | | | |
| | | • Patent Pending-Canted basket carrier allows for | | | | | |
| | | easy loading and unloading | | | | | |
| | | • Self contained controls, with programmable speed, | | | | | |
| | | time and dynamic breaking (4) position menu switch | | | | | |
| | | • Easy access drive components with "Extreme Duty" | | | | | |
| | | bearings and 3B polyband belt drive for long life | | | | | |
| | | • 460 Volt brake resistor & VFD | | | | | |
| | | • Unit is shipped 460 Volt | | | | | |
| 124.2 | ICCYCLONE- | THE CYCLONE BASKET, SD-50 LT< | 12 | $84.00 | | | $1,008.00 |
| | | To include: | | | | | |
| | | • One Size Hole, 1/2" square | | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| Quote No: | 30485   Rev #: 13 | | Project Description: Green's Line | | | |
| Customer: | San Miguel Produce | | | | | |
| Contact: | Terry Lund | | | | | |

| Item | Reference | Description | Quantity | Unit Price | Optional | Price |
|---|---|---|---|---|---|---|
| | | · Designed to last, Ergonomic hand holds. | | | | |
| | | · Traceable, made with metal detectable material. | | | | |
| | | · Color, standard White, (other color are available upon request) | | | | |
| 124.3 | RUB23763 | CART, BASKET, DRYER, SPIN, SD50-LT | 18 | $101.86 | | $1,833.48 |
| | | The SD50-LT basket cart will consist of the following: | | | | |
| | | · (5) wheels | | | | |
| | | · Plastic base (Rubbermaid) | | | | |
| | | | Item: | 124 | Total: | $47,841.48 |
| 125 | | PACKING SYSTEM | 1 | | | |
| 127 | 236709 | CONVEYOR, INCLINE AT 17-DEG., THERMODRIVE BELTING  36"W X 16 FT - LG. | 1 | $14,887.17 | | $14,887.17 |
| | | · Gearbox and motor: SST shaft mount | | | | |
| | | · Motor: SST 1 hp; 1750 RPM, 480V/3P | | | | |
| | | · Tail shaft, 1-7/16 bearing assembly | | | | |
| | | · ThermoDrive sprockets | | | | |
| | | · SS 6.38 VDL, 37.4 " Tall Pulley | | | | |
| | | · ThermoDrive sprockets | | | | |
| | | · ThermoDrive 8050 Flush Edge Flat Top (7 MM) Belt, Blue Polyurethane | | | | |
| | | · TH-01 Tube frame design | | | | |
| | | · UHMW slider bed | | | | |
| | | · SS Tube Leg Frame Weldments, 3X3 Tube | | | | |
| | | · SS Threaded adjustable SS swivel casters | | | | |
| | | · (2) Linked release lever arms | | | | |
| | | · Turn buckle link actuating round bar linear slide | | | | |
| | | · UHMW linear bearing blocks | | | | |
| | | · Belt lifter, round bar style lifter | | | | |
| | | · Mouted and wired Hubbel Disconnect | | | | |
| 128 | M233293 | CONVEYOR, PACKING, 36"W X 24'L(Approx.) | 1 | $23,400.30 | | $23,400.30 |
| | | Hand Feeds onto packing machine | | | | |
| | | · LP-01, STYLE; all stainless steel construction. | | | | |
| | | · 36" Wide, conveyor, 24' long | | | | |
| | | · Gearbox and motor: SST shaft mount | | | | |
| | | · Motor: SST 2 hp; 1750 RPM, 480V/3P | | | | |
| | | · Pulley: Tall, 5" dia. X 36"w, 1-7/16 bearing assembly | | | | |
| | | · Bearing: SS P/B, 1-7/16 | | | | |
| | | · Belting: 8050 ThermoDrive belting Mono-Pure, 2ply, white belting, laced | | | | |
| | | · Belt lifters | | | | |
| | | · Slide bed construction | | | | |
| | | · Discharge ears | | | | |
| | | · Tail pulley Guard | | | | |
| 129 | 227724C16 | MCC, TRANSFER SYSTEM | 1 | $11,420.39 | | $11,420.39 |
| | | This panel will control the TRANSFER CONEYORS and will include: | | | | |
| | | · NEMA 4X SST enclosure | | | | |
| | | · 30 amp main fused switch or circuit breaker | | | | |
| | | · E-stop contactor and reset pushbutton | | | | |
| | | · (1) 1 HP VFD (Elevator ) | | | | |
| | | · (1) 1 HP VFD (Transfer belt ) | | | | |
| | | · (2) 1 HP VFD (open bag conveyors) | | | | |
| | | · (1) 1 Hp Ful voltage starter (seal bags transfer conveyor) | | | | |

| Quote No: | 30485 | Rev #: 13 | Project Description: | Green's Line |
|-----------|-------|-----------|----------------------|--------------|
| Customer: | San Miguel Produce | | | |
| Contact: | Terry Lund | | | |

| Item | Reference | Description | Quantity | Unit Price | Optional | Price |
|------|-----------|-------------|----------|------------|----------|-------|
| | | • Starters will have stop/start pushbuttons or HOA and pilot lights for controls<br>• All necessary terminals, fuses and nameplates<br>• Panel to be UL listed<br>• SST floor mount stand<br><br>CHANGE ORDER #12 - MODIFY ITEM # 129 (6/30/14- BR)<br>• Price increase | | | | |
| 130 | | <u>PRE-PACKING MACHINE by CUSTOMER</u> | 4 | | | |
| 131 | M233293 | <u>CONVEYOR, OPEN BAG, 12"W X 26'L(Approx.)</u><br><br>Open Bag Conveyor<br>• LP-01, STYLE; all stainless steel construction.<br>• 12" Wide, conveyor, 26' long<br>• Gearbox and motor: SST shaft mount (Belt Speed must be verified)<br>• Motor: SST 1 hp; 1750 RPM, 480V/3P<br>• Pulley: Tail, 5" dia. X 12"w, 1-7/16 bearing assembly<br>• Bearing: SS P/B, 1-7/16<br>• Mono-Pure, 2ply, white belting, laced<br>• Value Guide, Adjustable Guide Rails<br>• Side bed construction<br>• Discharge ears<br>• Channelized leg support w foot pad<br>• Casters, all Swivel | 2 | $15,372.79 | | $30,745.59 |
| 131.1 | 229441 | <u>CANCEL -MANUAL MOTOR STARTER 1.0 - 1.6AMP</u><br><br>Combine with item #129 | 2 | $932.83 | | $1,865.66 |
| 131.2 | 229441 | <u>CHANGE ORDER #12 - MODIFY ITEM #131.2</u><br><u>CANCELED - MANUAL MOTOR STARTER 1.0 -1.6AMP</u><br><br>Combine with item #129<br><br>CHANGE ORDER #12 - MODIFY ITEM #131.1 (6/30/14-BR)<br>• Cancel item 131.1 | 2 | ($932.83) | | ($1,865.66) |
| | | | Item: 131 | Total: | | $30,745.59 |
| 132 | | <u>BAG SEALER by CUSTOMER</u> | 1 | | | |
| 133 | M233293 | <u>CONVEYOR, TRANSFER SEALED BAG, 16"W X 20'L(Approx.)</u><br><br>Open Bag Conveyor<br>• LP-01, STYLE; all stainless steel construction.<br>• 16" Wide, conveyor, 20' long with no product side guides<br>• Gearbox and motor: SST shaft mount<br>• Motor: SST 1 hp; 1750 RPM, 480V/3P<br>• Pulley: Tail, 5" dia. X 12"w, 1-7/16 bearing assembly<br>• Bearing: SS P/B, 1-7/16 | 1 | $14,295.50 | | $14,295.50 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Quote No: | 30485 | Rev #: 13 | Project Description: | Green's Line | | | |
| Customer: | San Miguel Produce | | | | | | |
| Contact: | Terry Lund | | | | | | |

| Item | Reference | Description | Quantity | Unit Price | Optional | Price |
|---|---|---|---|---|---|---|
| | | • Mono-Pure, 2ply, white belting, laced<br>• Slide bed construction<br>• Discharge ears<br>• Channelized leg support w foot pad<br>• Casters, all Swivel | | | | |
| 133.1 | 229441 | CANCEL-MANUAL MOTOR STARTER 1.0 -<br>1.6AMP<br><br>Combine with Item #129 | 2 | $466.42 | | $932.83 |
| 133.2 | 229441 | CHANGE ORDER #12 - MODIFY ITEM<br>#133.1<br>CANCELED - MANUAL MOTOR STARTER<br>1.0 -1.6AMP<br><br>Combine with Item #129<br><br>CHANGE ORDER #12 - MODIFY ITEM #133.1 (6/30/14-BR)<br>• Cancel item 133.1 | 1 | ($932.83) | | ($932.83) |
| | | | Item: 133 | Total: | | $14,295.50 |
| 134 | 230320C04 | 18"W BAG TAKE-AWAY CONVEYOR X 84"<br>LG.<br><br>• Horizontal SS construction<br>• Gearbox and motor: SST shaft mount<br>• Motor: SST 1 hp; 1750 RPM, 480V/3P<br>• Belt: Mono-pure 2 ply tpv FDA blue smooth x pyra-mini, 18"w<br>• Adjustable guides<br>• approximately 84" long<br>• Adjustable legs<br>• Casters, Swivel | 1 | $10,648.20 | | $10,648.20 |
| 134.1 | FORT20X10-E | METAL DETECTOR, FORTRESS TECH, SS<br>APERTURE w 10" X 20"<br><br>SS, PHANTOM,<br>• Contact Reporter Lite Software Included<br>• Detailed Data Collection<br>• Digital Signal Processing Technology<br>• Ultra Sensitive Detection<br>• AutoTest: Self Diagnostic Testing<br>• Automatic Calibration<br>• System Set-Up in Seconds<br>• Flash Memory Stability<br>• Multi-Level Password Protection | 1 | $13,000.00 | | $13,000.00 |
| | | | Item: 134 | Total: | | $23,648.20 |
| 150 | | ESTIMATED SHIPPING COST-<br><br>This just an estimate only<br>This is a estimate to ship the above equipment from California to Georgia<br>it is estimated at;<br>(3) 40' flat bed trailer fully tarped | 1 | $20,344.83 | | $20,344.83 |
| TERMS OF THE SALE: | | 20% DOWN DUE WITH ORDER,  30%  60 DAYS AFTER<br>ORDER, 40 DUE PRIOR TO SHIPMENT, BALANCE NET<br>30 | | Totals: | | $525,007.22  USD |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Quote No: | 30485 | Rev #: 13 | | Project Description: | Green's Line | | |
| Customer: | San Miguel Produce | | | | | | |
| Contact: | Terry Lund | | | | | | |

| Item | Reference | Description | | Quantity | Unit Price | Optional | Price |
|---|---|---|---|---|---|---|---|

TOTAL DOES NOT INCLUDE SHIPPING, CRATING, INSTALLATION OR FIELD WIRING, UNLESS NOTED ABOVE.
INBOUND FREIGHT FOR PURCHASED OEM EQUIPMENT WILL BE INCLUDED IN FINAL INVOICE.

**Note**
Unless otherwise stated, the above descriptions and prices do not include refrigeration, control panels, boxes or electrical wiring. Depending upon final line configuration, controls may be combined in one or more common enclosures. Substantial savings can be realized this way over individual control panels for each item above. Additional crating cost may be incurred based on shipping requirements. This quote is valid for a period of 30 days, does not include sales tax, mechanical or electrical installation, or controls (unless otherwise noted above), and is F.O.B. Gilroy, CA. or point of manufacture. Prices are subject to change due to layout and design requirements or changes. All pricing noted as ESTIMATES are subject to change and will be updated before final invoice. The delivery date is based on current and anticipated work load, availability of materials, parts and supplies from vendors.
Delivery : Please allow 12 weeks delivery time. A.R.O. for Shipment plus transit. The delivery date will be confirmed when the order is placed and the deposit is received.

*HMI will be Indemnified from liability if the purchased equipment is sold, modified, moved or customized from its original new condition at installation. See HMI's Terms and Conditions item # 19 and 20 for further seller indemnification.*

BUYER IS REQUIRED TO DRAW A LINE THROUGH ANY ITEM THAT IS NOT BEING ORDERED AT THIS TIME, EVEN IF NOT INCLUDED IN THE TOTAL PRICE. PROJECT CANNOT PROCEED WITHOUT THE BUYER RETURNING THIS SIGNED DOCUMENT TO HMI EITHER BY FAX OR MAIL.

Accepted By : _____     Title : _____

Date : _____     Purchase Order # : _____

Please see attached (5) pages of "TERMS AND CONDITIONS APPLICABLE TO THIS CONTRACT"

16-CV-200

# INVOICE



## URSCHEL
LABORATORIES INCORPORATED
2503 Calumet Avenue
P.O. Box 2200
Valparaiso, Indiana 46384-2200 U.S.A.
Tel: 219/464-4811   Fax: 219/462-3879

EIN # 35-0726105

SHIP TO:   00237487                    1029587
SAN MIGUEL PRODUCE
118 B FOREST PARK WAY

FOREST PARK GA  30297

| INV. NO. | 141303-695 | TERMS | DEPOSIT |
|---|---|---|---|
| YOUR P.O. # | 40682 - GEORGIA | | |
| INVOICE DATE | 13 MAR 14 | SHIP HOW | PPD |

SOLD TO:   82207267
SAN MIGUEL PRODUCE
4444 NAVALAIR RD
ATTN ACCOUNTS PAYABLE
OXNARD CA  93033          93033

| SHP VIA | PROPOSED SHIP DATE 6/27/2014 |
|---|---|

TERRY LUND                    Page  1
805-488-0981, EXT 109

| QUANTITY | PART NO. | DESCRIPTION | PRICE EACH | AMOUNT USD ONLY |
|---|---|---|---|---|
| 1 | MT2510 | URSCHEL® MODEL TRANSLICER 2510 | 75,706.00 | 75,706.00 |
| | | SERIAL NO. 663 | | |
| | | | | |
| | | PARTS ON MACHINE: | | |
| | | MACHINE:  LONG FRAME, PRIMARY & SECONDAR | | |
| 1 | 051067 | MOTOR, 1 HP, SS, 200/400V, 208-230/460V | | |
| 1 | 051067 | MOTOR, 1 HP, SS, 200/400V, 208-230/460V | | |
| 1 | 051792 | HINGED BELT GUARD, LEFT, EXTENDED | | |
| 1 | 051793 | HINGED BELT GUARD, RIGHT, EXTENDED | | |
| 1 | 051764 | BELT SLIDE, PRIMARY | | |
| 1 | 051111 | BELT SLIDE, SECONDARY | | |
| 4 | 051593 | BELT ROLL, COATED | | |
| 2 | 051104 | FEED BELT, PRIMARY, SMOOTH, BLUE | | |
| 2 | 051105 | FEED BELT, SECONDARY, SMOOTH, BLUE | | |
| | | 60 HERTZ | | |
| | | 460 VOLTS | | |
| 1 | 051811 | ELEC ASSY, 200-450V, W/SEC BELT | | |
| 1 | 051808 | ELEC ENCL, 200-450V, VFD, W/SEC BELT | | |
| 1 | 051691 | MOTOR, 3 HP, SS, 200-230/460 V | | |
| 1 | 051715 | FRAME, STANDARD, IEC | | |
| 1- | 051151 | REAR GUARD ADJUSTER | | |
| 1 | 051754 | REAR GUARD ADJUSTER | | |
| 1 | 051147 | SHEAR EDGE HOLDER | | |
| 1 | 051718 | DISCHARGE CHUTE ASSEMBLY, CENTERED | | |
| 1 | 051053 | WHEEL ASSY, JULIENNE, 600-2" X 2" | | |
| | | WARNING SIGNS & LABELS, ENGLISH & SPANIS | | |
| | | INSTRUCTION MANUAL & IMPORTANT PAPERS | | |

SUBTOTAL                    75,706.00

FREIGHT CHARGES                    975.00
GEORGIA  7.0000%                    5,299.42

IF THIS IS A TAX EXEMPT PURCHASE, PLEASE PROVIDE
US WITH THE APPROPRIATE EXEMPTION FORMS WHEN
SENDING IN YOUR ADVANCE PAYMENT.

2016 APR -5  PM 3:28   TOOMBS COUNTY CLERK OF COURTS

Instruction manuals for Urschel machinery are provided to our customers at no charge.
To order manuals, please call (219) 464-4811, include model and serial number.

SEE REVERSE SIDE FOR TERMS & CONDITIONS

ORIGINAL

# INVOICE

**URSCHEL**
LABORATORIES INCORPORATED
1903 Calumet Avenue
P.O. Box 2200
Valparaiso, Indiana 46384-2200 U.S.A.
Tel 219/464-4811  Fax: 219/462-3879

EIN # 35-0726105

SHIP TO:  00237487                    1029587
          SAN MIGUEL PRODUCE
          118 B FOREST PARK WAY

          FOREST PARK GA  30297

| INV. NO. | 141303-695 | TERMS | DEPOSIT |
|---|---|---|---|

| YOUR P.O.# | 40682 - GEORGIA |
|---|---|

| INVOICE DATE | 13 MAR 14 | SHIP HOW | PPD |
|---|---|---|---|

SOLD TO:  82207267
          SAN MIGUEL PRODUCE
          4444 NAVALAIR RD
          ATTN ACCOUNTS PAYABLE
          OXNARD CA  93033          93033

| SHIP VIA | PROPOSED SHIP DATE  6/27/2014 |
|---|---|

TERRY LUND                          Page  2
805-488-0981, EXT 109

| QUANTITY | PART NO. | DESCRIPTION | PRICE EACH | AMOUNT USD ONLY |
|---|---|---|---|---|
| | | *** TOTAL *** | U.S. $ | 81,980.42 |
| | | ****PLEASE REMIT TO:    URSCHEL LABORATORIES, INC. | | |
| | | **** P.O.BOX 2200   VALPARAISO, IN  46384 | | |
| | | **** OVERNIGHT DELIVERY ADDRESS: | | |
| | |   **** 2503 CALUMET AVENUE   VALPARAISO, IN  46384 | | |
| | | ADVANCE DEPOSIT DUE UPON RECEIPT IN ORDER TO RETAIN SCHEDULED SHIP DATE. | | 81,980.42 |
| | | $975 FREIGHT CHARGE IS A QUOTE AND IS SUBJECT TO A SLIGHT INCREASE OR DECREASE DUE TO FUEL SURCHARGE. | | |

Instruction manuals for Urschel machinery are provided to our customers at no charge.
To order manuals, please call (219) 464-4811, include model and serial number.

SEE REVERSE SIDE FOR TERMS & CONDITIONS

ORIGINAL

*16-CV-200*

# Pre-Pack Machinery, Inc.

P.O. Box 3875
Champaign, IL 61826
Phone 217-352-1010
       800-475-3030
Fax   217-352-1119

April 1, 2014

Mr. Terry Lund
San Miguel Produce
4444 Navalair Rd.
Oxnard, CA 93033

Hi Terry,

We're pleased to present this proposal for (4) Greens Packers for your consideration and approval:

   4   GREENS PACKERS - MOD: PP-15-14-LBD-S    $ 23,800.00 EA.   TOTAL  $ 95,200.00

These Packers will be the built to the same specifications as the models that you are using in your Oxnard facility. These Packers will have 50 kg. stainless steel load cells as your current models do, but they will have Doran 2200CW digital indicators. These indicators have replaced the Doran 4200 indicators that we have been using for many years. They will have the delay after accept software that we developed with Doran several years ago.

Based on our current production schedule, we estimate shipping the Packers 12 – 14 weeks after receipt of an order.

Our normal terms of 50% due at the time of order, 30% due prior to shipping, with the balance due within 30 days of shipping will apply. Freight is F.O.B. our facility in Champaign, IL. Estimated freight charges to Vidalia, GA are $880.02.

We appreciate your business, and this opportunity to be of further service to you.

Sincerely,

Rick Martin
President
Pre-Pack Machinery, Inc.
www.prepackmachinery.com

FILED BY TOOMBS COUNTY
CLERK OF COURTS
2016 APR -5 PM 3: 28